[S. F. No. 1583. Department Two.—December 22, 1900.]

## HESTER A. LARRABEE, Appellant, *v.* TOWN OF CLOVERDALE et al., Respondents.

MUNICIPAL CORPORATION—LIABILITY—GRADING OF STREET—STOPPAGE OF WATERCOURSE—INJURY TO LOT OWNER.—A town is liable to the owner of a lot for damages resulting from the grading of a street in such a manner as to stop the flow of water in a channel leading to a river and to cause the water to back up and overflow such lot.

ID.—IMMATERIAL QUESTIONS.—The questions whether the channel or waterway in which the water was accustomed to flow to the river was natural or artificial and whether the water flowed therein only during rainy weather, or whether it was only surface water, are immaterial to the cause of action for causing it to accumulate and overflow plaintiff's lot to his damage.

ID.—"NATURAL CHANNEL"—SURFACE WATER—DUTY OF TOWN.—The term "natural channel" may be construed as including all channels through which, in the existing condition of the country, the water naturally flows; and where surface water has a definite channel in which it is accustomed to flow, the town through which it flows is bound to provide means for its escape in grading its streets.

ID.—SOURCE OF WATER IMMATERIAL.—No matter from what source or by what means the water which flowed through the channel was received therein, the town had no right to turn it upon the land of the plaintiff.

ID.—CONSEQUENTIAL DAMAGES FROM GRADING—DIRECT INVASION OF RIGHTS.—The principle that the town, in the regular performance of its official functions in grading the street, is not responsible for consequential damages, has no application to the stoppage of a watercourse which causes a direct invasion of the plaintiff's rights.

APPEAL from an order of the Superior Court of Sonoma County denying a new trial. S. K. Dougherty, Judge.

Smith & Murasky, and James F. Smith, for Appellant.

A city is liable for the obstruction of surface water accustomed to flow from lots in a definite channel. (*Los Angeles etc. Assn. v. Los Angeles*, 103 Cal. 461, 468; *Conniff v. San Francisco*, 67 Cal. 45; *Richardson v. Eureka*, 96 Cal. 444; *Maguire v. Car-*

*terville*, 76 Ga. 84; *Rychlicki v. St. Louis*, 98 Mo. 497[1]; 4 L. R. Ann. 594; *O'Brien v. St. Paul*, 18 Minn. 176; *Pettigrew v. Evansville*, 25 Wis. 223, 230.[2])

James W. Oates and J. R. Leppo, for Respondents.

The town is not liable for consequential damages arising from its authorized acts in grading the streets. (Dillon on Municipal Corporations, sec. 989.) The nonsuit was properly ordered. The trial was by the court, in which case the rule applicable to jury trials that if there is some evidence tending to support the complaint, a nonsuit should not be granted, does not apply. (*Downing v. Murray*, 113 Cal. 455; *Fox v. Southern Pac. Co.*, 95 Cal. 234.)

SMITH, C.—The plaintiff was nonsuited in the court below, and appeals from an order denying a new trial. The suit was brought to enjoin the maintenance of an alleged nuisance, and for damages suffered by the plaintiff by reason of it. The defendants, other than the town, were trustees of the town, but are sued individually. There was no evidence tending to establish the cause of action as against them; and as to them the nonsuit was rightly granted. The material facts of the case as disclosed by the evidence are as follows:

Plaintiff is the owner of a lot containing about two acres of land in the town of Cloverdale, fronting northwest on First, and northeast on Washington street. First street runs northeast and southwest; but the witnesses speak with regard to it as though it ran east and west, and for convenience of expression I will adopt this usage. The plaintiff has been the owner of the lot in question since 1890, and had previously resided thereon with her husband from 1886. During all this time there was a waterway running along the south side of First street past her lot, in which, during the rainy season, or at least during wet seasons there was running water. This water, prior to 1893, crossed Washington street through a culvert, and passed on to West street—about a thousand feet farther on—and thence along the same southerly to a large ditch, and into the river. But in that year Washington street was graded across

---

[1] 14 Am. St. Rep. 651.   [2] 3 Am. Rep. 50.
CXXXI. Cal.—7

First street so as to form an embankment across the waterway, and without culvert, by which the water was diverted from its former course and made to flow along the west side of Washington street, near the east boundary of plaintiff's lot. The result was that, during the two rainy seasons following this work, the water was backed up over the land of the plaintiff, and part of her land, with thirty or forty feet of her fence on Washington street, washed away. The channel of the water was also washed out to the depth of about three or three and one-half feet, and to the width of six or seven, and access and egress to and from her land thus impeded.

One of the grounds for nonsuit was that, prior to 1893, the water—which respondent claims was mere surface water—"never run there in any well-defined channel for any considerable time"; and the court seems to have based the decision on this ground, or, as expressed by itself, on "the absence of a clearly defined channel upon First street prior to 1893." But there was evidence that there was such a channel. The plaintiff testified that from the time she went to reside on the place in 1886 "there was a waterway at the edge of the sidewalk . . . . perhaps eighteen inches deep, with a sandy, pebbly bottom," crossed by "a plank about three feet along." And the witness Crigler testified that the water had flowed along First street from the time it was first graded in 1881; and before that, "for twenty-five or more years," had "flowed along generally in the direction of First street," in "a well-defined watercourse and channel meandering generally along what is now the general course of First street." Some of the witnesses, indeed, testified that prior to 1893 there was no regular ditch along First street but only a gutter, and that the water was confined merely by the sidewalk on one side and the rise of the street on the other. But this is not in conflict with the other evidence, but equally establishes the existence of "a watercourse," or "clearly defined channel"; and, indeed, had it been otherwise it should, on motion for a nonsuit, have been disregarded.

The fact that the water flowed only during the rainy season, or during rainy weather, or, as claimed by respondent, was mere surface water, is quite immaterial; and it may even be admitted (though there was evidence to the contrary) that the course

over which the water flowed was not a natural watercourse. It was sufficient that there was and for many years had been a definite channel, whether natural or artificial, and that the defendant obstructed this channel, and thus diverted the water onto plaintiff's land—that is to say, not only onto the west half of Washington street—which is presumably the land of the plaintiff (Civ. Code, secs. 831, 1112)—but onto her lot outside the street. "An individual has no right to collect in artificial channels mere surface water and precipitate it on the land of another. Nor has a corporation, whether public or private, the right to collect in such channels the mere surface water precipitated by rain or snow over large districts and throw it upon the property of another." (*Conniff v. San Francisco*, 67 Cal. 45.) With reference, therefore, to the damage accruing from the impact of the water onto the plaintiff's land, the case comes directly within the principle cited.

And generally, I think, the case comes within the authority of the decision last cited and of *Los Angeles Cem. Assn. v. Los Angeles*, 103 Cal. 461. In *Conniff v. San Francisco, supra*, which was a case very similar to this, the channel obstructed is referred to in the course of the opinion as "a natural channel," but the meaning of this expression is to be interpreted by reference to the actual character of the channel as shown by the pleadings and evidence in the case; and from this it does not appear to have been anything more than "a watercourse crossing the street," and "the channel of usual escape." We may, therefore construe the term "natural channel" as including all channels through which, in the existing condition of the country, the water naturally flows. As is said in *Los Angeles Cem. Assn. v. Los Angeles, supra:* "In all regions of country having a broken surface, and subject to heavy rainfall, surface water does make for itself or assume definite channels in seeking, pursuant to the law of gravitation, a lower level"; and it is also said that municipal corporations are bound to provide for the escape of surface water in all "that class of cases where the surface water, owing to the conformation of the adjacent country, has formed for itself a definite channel in which it is accustomed to flow." In both of the cases cited the decision and language of the court must be construed as referring to the existing con-

dition of the surrounding country, which had come, in each case, to be a part of a city, and thus materially and essentially transformed from its original condition. In each case, though the channel of egress was probably the same as before the city existed, the waters flowing to it—by reason of the grading of lots and streets—may, and indeed must, have been different from what before the improvement of the city naturally flowed to the same point; and it is to the conditions existing at the time of the suit, and not to those anciently or originally existing, that the decisions must be understood to relate. And this, on principle, must be the true construction of the term "natural channel," when used in the present connection. For by the necessarily great changes that must occur in the conformation of the country in the building of a city the natural channels for the surface water are changed; and, as the changes in the ground are inevitable and legitimate, and therefore natural, the new channels, through which under natural laws the surface waters are discharged, must also be regarded as natural.

Some other grounds are urged by respondent in support of the judgment to which we will briefly advert:

1. It is claimed that the natural course of the surface waters from the canyon west of the town, in which they have their source, was not along First street, but from the land of one Smith, west of the western terminus of the street, southwesterly into a ditch passing to the south of the plaintiff's lot; that the waters were diverted to the course along First street by a board fence erected by Smith about the time of the construction of the enbankment across First street complained of; and that in fact the damage to the plaintiff was caused by the increased flow of water thus occasioned, and would not otherwise have occurred.

To understand this position, it should be understood that prior to 1893 there was a picket fence through Smith's place on the prolongation of the south line of First street, which in 1893 was replaced by the board fence referred to. But, as we have seen, the evidence showed that long before the year referred to the course of the water had been along First street; and that any material difference was made in the flow is a mere inference. Nor, though it were otherwise, would the liability of the defendant be affected. There is no reason to suppose

that the increased flow, if any, would have damaged the plaintiff's land if it had not been turned by the defendant; and however the water may have come into the street, the defendant had no right to turn it upon the land of the plaintiff.

2. It is further urged that the grading of Washington street by the city was in the regular performance of its legitimate functions, and that it is not responsible for consequential damages. But the case is not one to which this principle can apply. The act complained of was a direct invasion of the plaintiff's rights and consequently unlawful. (*Conniff v. San Francisco, supra,* and cases cited.)

I advise that the order denying a new trial be reversed as to respondent the town of Cloverdale.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order denying a new trial is affirmed with reference to the respondents other than the town of Cloverdale, and as to the respondent last named it is reversed and cause remanded for a new trial.        McFarland, J., Henshaw, J., Temple, J.

Hearing in Bank denied.