[Civil No. 1319.   Filed March 10, 1914.]

[139 Pac. 177.]

## CITY OF TUCSON, a Municipal Corporation, Appellant, v. JAMES R. DUNSEATH, Appellee.

1. WATERS AND WATERCOURSES—SURFACE WATERS—DOMINANT OR SERVIENT ESTATE.—As a rule, there is no dominant or servient estate with respect to surface or rain waters.

2. WATERS AND WATERCOURSES—SURFACE WATER—EMBANKMENTS.—At common law one may prevent surface water from coming on to his premises from higher land by the erection of embankments, etc., in the improvement of his premises.

3. WATERS AND WATERCOURSES—DRAINS IN STREET—CONSENT OF CITY— IMPLIED CONSENT.—Even though one who constructed a ditch in a street for draining surface water is not shown to have obtained the city's permission to do so, its use for some ten months for that purpose, without objection by the city, would justify a presumption that its consent was secured or that it had ratified its construction by acquiescence.

4. MUNICIPAL CORPORATIONS—TORTS—CASTING SURFACE WATER.—Before plaintiff's lot had been raised so as to be somewhat above the proposed street grade except in the rear, a ditch was dug along the street by another adjacent owner with the city's consent or acquiescence for the purpose of draining away the surface water, and thereafter the city engineer, merely in view of raising the street in the future and not for making a present improvement, dumped waste material in the street so as to make an embankment across the ditch and dam up the surface waters, which were thereby cast on plaintiff's land in a greater volume than they would have naturally flowed thereon. *Held,* that the city was guilty of an actionable wrong in thus impounding waters and casting them upon plaintiff's land.

   [As to right of municipality to drain surface water from highway upon adjoining land, see note in Ann. Cas. 1912B, 915.  As to right of land owners generally to divert or obstruct surface waters, see notes in 16 Am. St. Rep. 710; 85 Am. St. Rep. 707.]

5. MUNICIPAL CORPORATIONS—OFFICERS—AUTHORITY.—Where a contract for the improvement of a street authorized the contractor to place the waste material as directed by the city engineer, the engineer's act in directing the contractor to dump it in a certain street, which resulted in stopping up the drain, was the act of the city, since municipal corporations can only act by their servants and agents.

6. MUNICIPAL CORPORATIONS—SURFACE WATERS—DISPOSITION.—Munici-
pal corporations are under the same duties and liabilities as other
persons, in the control and disposition of surface waters.

7. MUNICIPAL CORPORATIONS—TORTS—LIABILITY OF CITY.—A municipal
corporation is liable for injuries caused by the negligent or wrongful
act of its servants and agents for which it is responsible.

8. WATERS AND WATERCOURSES—OBSTRUCTING SURFACE WATER—ACTIONS
FOR DAMAGE—INSTRUCTIONS.—In an action against a city for dam-
age to property by impounding surface water in a street and cast-
ing it upon plaintiff's property, the court instructed that the term
"act of God" applied only to events in nature so extraordinary that
the history of climatic conditions in the locality afforded no reason-
able warning of them, and liability for injury caused by floods
cannot be avoided, on the ground that the flood was an act of God,
where it might have been expected, though it occurred infrequently,
and that even though the city had caused material to be dumped
in the street, yet, if the storm which caused the injury to plaintiff's
property was so overwhelming in character that it would of itself
produce the injury independently of the material, then the jury must
find for defendant, and further instructed that, to give a body of
water the character of an extraordinary flood, it is not necessary
that it should be the greatest flood within memory, but its character
should be tested by comparison with the usual volume of floods
ordinarily occurring. *Held*, that the instruction as a whole was
that, if the storm would have caused the injury to plaintiff's prop-
erty independent of the obstruction placed in the street, plaintiff
could not recover.

9. APPEAL AND ERROR—HARMLESS ERROR—RULINGS ON EVIDENCE.—In
an action against a city for damage from obstructing a street ditch
so as to cause water to gather in the street and be cast on plain-
tiff's lot, any error in rulings on evidence as to whether the par-
ticular rain was extraordinary was harmless, where it appeared that
the only outlet it had from the street after it was obstructed was
over plaintiff's premises.

APPEAL from a judgment of the Superior Court of the
County of Pima. W. F. Cooper, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Frank E. Curley, City Attorney, for Appellant.

Mr. John H. Campbell, for Appellee.

ROSS, J.—The appellee is the owner of lot 17, block 3, of
the city of Tucson. Lots 18, 19, and 20 in same block are

owned by one Allen B. Jaynes. All these lots face on First street, and lot 20 is on the west side of Third avenue. Block 3 was a part of the original grant by the United States government to the city of Tucson. It was platted into lots, and First street and Third avenue were dedicated by the city. Extending across block 3 and lots 17, 18, 19, and 20 thereof was a natural swale or depression, the general course of which was southwesterly and northeasterly. This swale reached easterly some distance from block 3, across Third avenue, and across block 2, and into it rain and surface waters gathered and were carried off into First street at a point a little west of lot 17. While block 3 was in this natural condition, appellee and Jaynes purchased the named lots for the purpose of building thereon dwelling-houses. The surface of lots was filled in and raised to about ten inches above the proposed grade of First street; the raised surface extending back and covering and obliterating the swale. Along the east side of lot 20 and the west side of Third avenue and in the avenue, Jaynes, for the purpose of carrying flood or rain water off his property, constructed a ditch from the swale down to First street. He says: "At the time I improved my property, I scooped out a ditch down First street; that is, started on Third avenue. There was a very slight ditch on Third avenue. It was low, anyway, there; we just built up dirt on either side. . . . " This ditch on Third avenue, prior to its being filled and prior to the damage complained of, had been of sufficient capacity to carry off all the water coming down the swale. In April or May, 1910, the city was improving or grading Fourth avenue, and the city engineer caused some of the waste material taken from Fourth avenue to be deposited on Third avenue, extending from First street north about 100 feet. The surface of Third avenue was raised, and the ditch that had been made by Jaynes was filled up so that on July 21, 1910, when it rained, a large body of water was collected, forming a kind of basin. The dirt filled in Third avenue and in the ditch, prevented the water from escaping, as it had done before, down on to First street, and forced it over and across lots 20, 19, and 18 parallel to and about ten feet north of the old depression on to appellee's lot 17, and filled his cellar full of water, destroying and damaging property of the value of $333.50.

The contractor who was making the improvement on Fourth avenue dumped the waste earth on Third avenue under the authority of a stipulation in his contract with the city, to the effect that "all waste material shall be disposed of as directed by the city engineer." The ditch along Third avenue had been constructed and in use for about ten months before it was filled up.

The case was tried before a jury. Verdict and judgment for appellee. The city appeals and assigns fifteen errors based upon the giving and refusing instructions and in the admission and rejection of evidence.

The instructions given, of which complaint is made, were based upon the theory that, if the facts alleged in plaintiff's complaint were true, the city was liable in damages, and the instructions requested by appellant and refused were based upon the theory: (1) That the filling of swale or depression of lots 17, 18, 19, and 20 by Jaynes and appellee did not relieve the premises of the servitude of the surface water theretofore naturally running over and across their premises; (2) that the ditch made by Jaynes to convey the water along Third avenue to First street and away from premises was made without authority, and the city acted within its rights in filling it up; (3) that surface of premises was permitted to remain below the established grade, but for which the injury would not have occurred; (4) that the act of the city engineer and contractor in dumping waste earth on Third avenue was not the act of the city and could not bind the city; and (5) granting that the city had done all the things charged against it, it was acting within the law, and any damages suffered by appellee were only consequential of the exercise of its rights and *damnum absque injuria.*

We will consider the appellant's contentions in the order given. It will be borne in mind that the city sold the premises to appellee and Jaynes for residential purposes. It was apparent that homes could not be built thereon without filling in and leveling up the surface of lots. The right to raise the surface of lots and obliterate the swale or depression extending over them was as clearly implied and understood between the purchasers and seller as if it had been stipulated in the deeds of conveyance. Therefore, in filling in their lots and raising the surface thereof, the purchasers did what

was in the contemplation of the city and what they were authorized to do under the law.

In a broad sense and as a general proposition there is no dominant or servient estate as applied to surface or rain waters.

The doctrine of the respective rights of adjoining owners of realty has been many times before the courts, and, as applied and administered under what is known as the so-called common-law rule, is fairly comprehended and limited by the following quotations:

"One is under no obligation to receive from the other the flow of any surface water, but may, in the ordinary prosecution of his business and in the improvement of his premises, by embankments or otherwise, prevent any portion of surface water coming from such upper premises." *Walker* v. *New Mex. S. P. R. Co.*, 165 U. S. 593, 41 L. Ed. 837, 17 Sup. Ct. Rep. 421.

"The lot of the defendant is in the midst of a populous city. The rule which governs the right to dispose of surface water in agricultural districts does not apply to such property. It is set apart, held, and owned for building purposes. To make it useful for this purpose, the owner has the right to fill it up, elevate it, to ditch it, to construct buildings on it in such a manner as to protect it against the surface water of an adjoining lot. If in so doing he prevents the flow of surface water upon his lot, the owner of the higher lot has no cause of action against him. This is a necessary incident to the ownership of such property. A contrary rule would operate against the advancement and progress of cities and towns and to their injury, and would be against public policy." *Levy* v. *Nash*, 87 Ark. 41, 20 L. R. A., N. S., 155, 112 S. W. 173.

"The owners of lots in cities and towns buy and own with the manifest condition that the natural or existing surface is liable to be changed by the progress of municipal development. All such owners have equal rights neither lessened nor increased by priority of improvement, and the primary right of each owner is to protect himself and his lot from loss or inconvenience from the flow of surface water. The owner at the foot of the slope is under no obligation to allow his lot to continue as a reservoir for the surplus water of the neigh-

borhood. He may shut it out by grading or otherwise, and the fact that thereby he may incidentally increase the flow on the adjoining lot neither makes him answerable in damages nor affects the adjoining owner's right in his turn to shut out the original, plus the increased, flow on his lot. The owner cannot be coerced as to time or manner of improvement by risk of having put upon him the burden of providing for the flow upon others. Some things, of course, he may not do. He may not proceed negligently so as to do unnecessary damage to others. But, so far as he acts upon his right to protect his enjoyment of his own property, any incidental loss to his neighbor is *damnum absque injuria*." *Reilly* v. *Stephenson*, 222 Pa. 252, 256, 128 Am. St. Rep. 804, 22 L. R. A., N. S., 947, 70 Atl. 1097, 1099.

The rule as announced in the above cases was recognized by this court in *Kroeger* v. *Twin Buttes R. R. Co.*, 14 Ariz. 269, Ann. Cas. 1914A, 1289, 127 Pac. 735.

The effect of the improvements made by appellee and Jaynes, upon the surface water, was to completely change its course from their premises along the drain or ditch on Third avenue. This ditch had been constructed by Jaynes and was in use when appellee began his improvements. Appellee's premises were distant from it the width of Jaynes' three lots and an alley. The suggestion by appellant that the making of this ditch in the street was a trespass, if granted as true, could hardly affect appellee, as he had no part in its construction.

Besides, even though Jaynes had obtained no permission to construct the ditch, its use for some ten months, without any objection on the part of the city, would justify a presumption that he had secured the consent of the city to construct it, or by its silence it had ratified his act. The city, as original owner of the premises and the coterminous streets, was fully aware of the conformation of the land and necessities of the situation, and doubtless willingly acquiesced in what was done by Jaynes toward protecting his premises. It is not claimed that the ditch made by Jaynes in any way interfered with the use by the general public of Third avenue or that the avenue was in any manner injured, while it must be conceded that such disposition of the surface water was not only practicable but of incalculable benefit to all the premises

protected.  In *Sheehan* v. *Flynn*, 59 Minn. 436, 26 L. R. A
632, 61 N. W. 462, the court said: "The common-law rule
as to liability for the diversion of surface water has been
modified in this and other states by the rule that a person
must so use his own as not unnecessarily or unreasonably to
injure his neighbor.  A circumstance to be considered in de-
termining what is reasonable use of one's own land is the
amount of benefit to the estate drained or improved, as com-
pared with the amount of injury to the estate on which the
burden of the surface water is cast.  *Hughes* v. *Anderson*,
68 Ala. 280, 44 Am. Rep. 147.  'But the extent to which any
proprietor may go in these and other ways, in incidentally,
while improving his own land, turning the surface water of
his own land off on the lands of others, must, in each case,
be determined by the degree of comparative injury it may
produce and relieve.'  Ray on Negligence of Imposed Duties,
301.  The benefit in this case will be the redeeming of twenty
acres of fine agricultural land, and the restoring of this high-
way, while the injury will be the submerging, for some time
in the spring, of an acre or two of such land as is found along
the shore of such a lake.  It seems to us that the extent to
which the common law is thus modified is well expressed in
the case of *O'Brien* v. *St. Paul*, 25 Minn. 335, 33 Am. Rep.
470, where it is said: 'It [surface water] has been called a
common enemy, which each owner may get rid of as best he
may; and some cases, and not a few, indeed, maintain the
owner's right to adopt any means he may choose to prevent
it coming on his land, or to turn it off from his land, without
regard to the consequences which may ensue to others.  These
cases are founded on an owner's assumed right to do abso-
lutely what he will with his own.  This right, however, is
somewhat restricted by the maxim that "a man must so use
his own as not unnecessarily to do injury to another," a
maxim which grows out of the necessities of society, and
without which society would be hardly possible.  A man's
right to use his property is restricted, for instance, to the
manner in which such property is ordinarily used.'  Again,
on page 336, it is said: 'Although we are not prepared to say
that in no case can an owner lawfully improve his own land
in such a way as to cause the surface waters to flow off in
streams upon the land of another, we do not hesitate to say

that he may not turn the water, in destructive currents, upon the adjoining land. . . . From the complaint, there does not appear any necessity, in grading the avenue, to collect the water at the point indicated, nor any difficulty in conducting it off without injury to private property.' This is a reasonable doctrine that takes into consideration all the circumstances of each case. It gives each man the common-law right to improve and enjoy his own property to its fullest extent, but limited by the requirement that he use reasonable care in disposing of surface water, which the common law did not always require him to do. When he has used such reasonable care, he can generally stand on his common-law rights, whether such surface water injures his neighbor or not." *Hume* v. *City of Des Moines*, 146 Iowa, 624, Ann. Cas. 1912B, 904, 29 L. R. A., N. S., 126, 125 N. W. 846.

Appellee and Jaynes had filled in the front of their lots and raised the surface thereof to or slightly above the established grades of First street and Third avenue. This filling on lots 18, 19, and 20 extended some feet north of the swale and entirely obliterated it. Appellee had also filled up and obliterated the swale on his lot 17. Where the water broke over on to the Jaynes premises, the surface was not raised to the proposed grade of the street, but was some higher than the natural surface of the street, so that it formed one of the walls of the basin of water that collected and was precipitated on appellee's premises. That the back end of premises was lower than the proposed grade of Third avenue cannot advantage the appellant, unless that fact, and not the filling in of ditch and Third avenue, caused the damage to appellee. It was not necessary that the entire surface of premises should have been raised to the proposed grade to entitle appellee to protection from negligent and wrongful injury. The action of the city should have been in view of the existing conditions, as were the precautions taken by appellee. If the city had been in the actual prosecution of the improving and grading Third avenue, exercising reasonable care and caution, and the injury had been a mere incident to such work, the appellee would be remediless. *Johnson* v. *White*, 26 R. I. 207, 65 L. R. A. 250, and notes "a" and "b," 58 Atl. 658. But in this case the waste material and earth placed in Third avenue and Jaynes' ditch were not placed

there in pursuance of any definite plan of present improvement, but with a view of future needs in raising the grade of said avenue.

The act of the city engineer in causing the contractor to dump the waste earth in Third avenue was the act of the city. The contract for the improvement of Fourth avenue authorized the contractor to place the waste (within certain limits) as directed by the engineer. The engineer, acting within the authority given him, was performing and acting for the city, and his acts were the city's acts. Municipal corporations, like other corporations, can act only by their servants and agents. 28 Cyc. 1269.

We are now brought to the main question, as to whether the city, in any event and in view of all the facts, is liable in damages to appellee. Municipal corporations in the control and disposition of surface waters are bound by the same rule as are private persons. Gould on Waters, section 272, says: "Cities and towns have no greater rights than individuals to collect in artificial channels, upon their streets and highways, mere surface waters, distributed in rain and snow over large districts, and precipitate it upon the premises of private owners, or to construct ditches upon private lands for public uses without compensation. A municipal corporation is liable for throwing water, collected in large quantities in a street, or in a gutter of a street, upon the land of a private owner." *Jordan* v. *Benwood*, 42 W. Va. 312, 57 Am. St. Rep. 859, 36 L. R. A. 519, 26 S. E. 266.

In the performance of administrative acts, the rule almost universally accepted at the present time is that a municipal corporation is liable for injuries caused by negligent or wrongful acts of its servants and agents, for which it is responsible.

Now, while the surface waters formerly followed the natural depression over appellee's premises, acting within their rights in grading and improving their lands, another depression, artificial, it is true, but natural in its uses, was made through which such waters escaped, much to the benefit of the premises, with no apparent or claimed injury to the city. The improvement of urban property necessarily works changes in the conformation of the surface ground, and what to-day may be the natural channel of drainage, to-morrow

may be occupied by buildings. As was said in *Larrabee* v. *Cloverdale*, 131 Cal. 96, 63 Pac. 143: ''And this, on principle, must be the true construction of the term 'natural ·channel,' when used in the present connection. For, by. the necessarily great changes that must occur in the conformation of the country in the building of a city, the natural channels for the surface water are changed; and as the changes in the ground are inevitable and legitimate, and therefore natural, the new channels, through which, under natural laws, the surface. waters are discharged, must also be regarded as natural.''

Without doubt the city had the same rights to improve its streets as appellee had to improve his property. To that end it could have raised the surface of Third avenue to the established grade and adopted means and plans to protect it from the surface waters brought upon it. The waste material that it dumped on Third avenue was not for present use, but for use some time in the future in grading the avenue and raising its surface. It was in preparation for contemplated work. It did not keep the water from the avenue, but impounded it on the avenue in a basin or reservoir from which it was precipitated on to appellee's premises in a greater volume and with added force. It made an embankment across the channel through which the surface waters had naturally passed for almost a year. It knew, or could have known by ordinary care, that the embankment made by it would deflect and precipitate the waters onto appellee's premises. Failing to provide an outlet made necessary by its own acts, it is guilty of an actionable wrong. *City of Evansville* v. *Decker*, 84 Ind. 325, 43 Am. Rep. 86; *Valparaiso* v. *Kyes*, 30 Ind. App. 447, 66 N. E. 175; *Weis* v. *City of Madison*, 75 Ind. 241, 39 Am. Rep. 135.

The annotator to *Johnson* v. *White*, II, note, ''b,'' 65 L. R. A. 262, says: ''Notwithstanding the difference of opinion as to liability for changing the course of drainage, there is practical unanimity in holding that the water cannot be gathered up and cast in a body on the adjoining property''—and cites a long list of cases sustaining the principle announced.

The refusal of the court to instruct on the theory of the nonliability of appellant, as contended for by it, was not

error. The instructions given properly submitted the issue of negligence to the jury.

One of the defenses of the appellant was that the damage that plaintiff sustained by reason of the flooding of his premises "was approximately caused by said sudden, violent, extraordinary, unforeseen, and unanticipated storm of rain." Upon this issue the court gave the following instructions:

"The term 'act of God,' in its legal sense, applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality afford no reasonable warning of them; and liability for injury occasioned by floods of water, where liability would otherwise attach, cannot be avoided on the ground that the flood was an act of God, where, from the climatic and geographical conditions, the flood might have been expected, though it occurred infrequently."

"You are further instructed that even though the city had caused the earth and other material to be dumped on Third avenue at the point alleged in plaintiff's complaint and testified to in this action, yet if you should further find that the storm that is alleged to have caused the injury to plaintiff's property was so overwhelming in character that it would, of itself, produce the injury complained of, independently of the said earth and other material, then your verdict must be for the defendant."

"The jury are instructed that, to give a stream or body of water the character of an extraordinary flood, it is not necessary that it should be the greatest flood within memory. Its character in this respect is to be tested by comparison with the usual volume of floods ordinarily occurring."

The appellant complains of the first and last subdivision of these instructions and insists that they do not state the law and are contradictory. Admitting the point made, yet we think, when the whole language on that question is construed and analyzed, the thought conveyed to the jury was that, if the storm would have caused the injury independent of the obstruction placed in Third avenue, the verdict should be for appellant. In other instructions the jury were told that before they would be authorized to return a verdict for the plaintiff, they must find, by a preponderance of the evi-

dence; that the injury was caused by the obstruction placed on Third avenue by appellant.

The evidence is that the rainfall for two hours was 1.35 inches. The appellant asked questions of witnesses as to whether such amount of rain was extraordinary or not. It complains that the court erred in sustaining an objection to the witness answering the question. Witnesses were permitted to state, over objection by appellant, that other rains previous and subsequent to July 21, 1910, were extraordinary, without giving the duration of the fall. Of this evidence complaint is made. As we view the facts in the case, the character of the rain, whether ordinary or extraordinary, can have little bearing, since, whatever its character, it had but one outlet, and that outlet was over appellee's premises. The evidence showed that other rains of equal or greater volume before the obstruction of Third avenue had passed down that avenue on to First street and not on to appellee's premises.

Judgment affirmed.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J., Dissenting.—I agree with the propositions of law supported by the authorities cited in the majority opinion to the effect that the common-law rule applicable to the flow of surface rain-water is in effect in this state, and as a consequence the owner of lands may improve the same without liability to answer in damages for injuries resulting to adjoining premises from the change of the flow of surface waters caused incidentally by, and as a consequence of, the improvements made. Within this principle of law, a railroad company may throw up embankments for a roadbed upon its right of way, even though the embankment may incidentally impede the flow of surface water from the adjoining premises and cause such waters to be thrown back upon the said premises to their injury, as held in *Walker* v. *New Mexico S. P. R. R. Co.*, 165 U. S. 593, 41 L. Ed. 837, 17 Sup. Ct. Rep. 421. The owner has the right to fill in his premises, and elevate the surface, or to ditch the premises, and to construct buildings upon his lands in such a manner as to protect the lands against the flow of surface water from

the adjoining lot, as held in *Levy* v. *Nash,* 87 Ark. 41, 20 L. R. A., N. S., 155, 112 S. W. 173, and he has the right to shut out the flow of surface water by grading or otherwise, without regard to whether his improvements, made for the purposes, incidentally increases the flow on the adjoining lot, as held in *Reilly* v. *Stephenson,* 222 Pa. 252, 70 Atl. 1097. And the owner, this appellant, has the right to improve its street by depositing suitable dirt therein for the purpose of raising the surface of the street up to an approved level or grade, without having to answer in damages for injuries resulting to an adjoining owner from a flow of surface water, the natural flow of which was incidentally changed by and as a consequence of such street improvements, as the facts in this case show, The above authorities amply support this right.

In all cases the owner must so exercise his rights mentioned, as in making all improvements, restricted by that other well-recognized maxim of law, namely: "That every man must so use his own as not unnecessarily to do injury to another." This rule was applied by us in *Kroeger* v. *Twin Buttes R. R. Co.,* 14 Ariz. 269, Ann. Cas. 1914A, 1289, 127 Pac. 735, where we held in effect the facts stated in the complaint *prima facie* show that the defendant had failed to so use its property.

The restriction is recognized in *Sheehan* v. *Flynn,* 59 Minn. 439, 26 L. R. A. 632, 61 N. W. 462, *Hughes* v. *Anderson,* 68 Ala. 280, 44 Am. Rep. 147, Ray on Negligence of Imposed Duties, 301, *O'Brien* v. *St. Paul,* 25 Minn. 335, 33 Am. Rep. 470, and in *Hume* v. *City of Des Moines,* 146 Iowa, 624, Ann. Cas. 1912B, 904, 29 L. R. A., N. S., 126, 125 N. W. 846, cited by the majority opinion. Many other authorities may be cited to the same effect. In all the cases cited the principle is applied to the case in which the improvements complained of were made on and within the limits of the lands improved, and it could be applied to no other conditions than such as involve improvements upon the owner's lands. As a consequence, the city alone can claim the right to improve its streets, and can be called upon to answer for damages only when it has made such improvements in such a manner as the plaintiff's premises have been unnecessarily injured. The city is not required to respond in damages for

such injuries as incidentally result from the improvements lawfully made, in a reasonably proper manner. *Johnson* v. *White*, 26 R. I. 207, 65 L. R. A. 250, 58 Atl. 658. The same rules of law would apply to Jaynes and Dunseath while making improvements upon their property.

It is clear that the city, as shown in this record, had the lawful right to deposit earth upon the street to an amount sufficient to raise the surface to the grade level adopted by the city. The plaintiff purchased his lots chargeable with facts sufficient to put him on notice of the grade level adopted for North Third avenue. Plaintiff graded his lot with reference to the grade of the street upon which his lot abutted. The grade of the street was located from a datum station at North Third avenue. He is in no position to complain that, when he purchased his property, he was misled by the natural conditions, and these conditions have been changed to his disadvantage by the city grading the street to the approved level.

In the building up of a city the natural channels for surface water are changed, and as changes in the ground are inevitable and legitimate, and therefore natural, the new channels through which, under natural laws, the surface waters are discharged must also be regarded as natural, as held in *Larrabee* v. *Cloverdale*, 131 Cal. 96, 63 Pac. 143. I have found no authority holding that a land owner may go upon adjoining lands and make improvements, such as a drain, thereon for the purpose of protecting his premises from the natural flow of surface water, and such drain, made under such circumstances, has been held to be a natural channel for surface water flow and discharge. No such authority exists. Such drain may become a natural channel under certain conditions, but those conditions are not present in this case. The land owner acquires rights to maintain such drain made by him on the lands of an adjoining owner from some other source and by some other right than because it is a natural channel. The principle referred to in *Larrabee* v. *Cloverdale, supra,* is directly beneficial to the city. When it has lawfully made the improvements upon its street, by depositing earth therein, it changes, by such improvement, the surface ground, and therefore the changes are natural, and the new channels through which, under natural laws, the

surface waters are discharged must also be regarded as nat-
ural channels.   The natural channel, therefore, was that fol-
lowed by the surface water through Jaynes' back yard, over
the alley and on to plaintiff's premises.   So considered, the
city owed plaintiff no duty to protect his premises from such
flow of surface water.   It was plaintiff's duty or privilege
to fight this surface water flow as a common enemy, with
such means as he may choose. · And this is the common-law
rule applicable to such cases.

The majority opinion holds that the earth placed in the
street by the city served to impound the surface water, caus-
ing it to form in a basin or reservoir, from which the water
was precipitated on appellee's premises· in a greater volume
and with added force.   The complaint alleges that ''defend-
ant caused to be dumped and piled earth and material at
and near the intersection of said East First street and North
Third avenue, for a distance of. about 100 feet northerly,
from said intersection, which said earth and material was so
carelessly and negligently dumped and piled and maintained
on said North Third avenue, and at the intersection of said
avenue and said East First street, that the ditch on and along
said Third avenue was entirely obstructed, and the waters
flowing from said block 2 at times of rain were diverted from
flowing into said East First street, and prevented by said
dumps and piles of earth and material from flowing to and
along said East First street; and the defendant negligently
failed to provide any outlet for said water, so that the same
collected behind said dumps and piles of earth and material,
and was caused by said dumps and piles of material, so placed
and maintained by defendant, to flow over and upon and into
the premises of the plaintiff.''   This allegation does not jus-
tify the holding that the water was caused to flow on to ap-
pellee's premises ''in a greater volume and with added
force.''   No such claim is made by the appellee in his com-
plaint.   The claim is made that the dumps and piles of earth
diverted the flow of water, and caused it to flow over and
upon and into his premises.   I can discern a material differ-
ence between an act that impounds surface water into a
basin or reservoir, and causes it to flow in greater volume
and with added force, and one that diverts the natural flow
of water.   The act that impounds surface water into a basin

or reservoir in destructive quantities, where the material impounding is negligently left in a weakened condition insufficient to withstand the natural strain upon it, and the walls of the basin give way, and the water escapes upon adjoining premises in destructive quantities, or when the owner by his improvements negligently impounds surface water, and provides no outlet, which causes the water to flow on to adjoining premises when it would not otherwise have flowed, in either instance the results being the same, the owner would be liable to the same extent as though he had intentionally constructed an artificial channel and purposely turned the water on to the adjoining premises. The wrong consists in the negligent impounding of the water, not in the making of the lawful improvements.

The complaint makes the negligent and careless manner of making the improvements the cause of the damage, and not the impounding of the surface water. The complaint avers that the surface waters flowing from block 2 were diverted by the improvements on the street, and caused to flow on to plaintiff's lands, causing the damage. Where the improvements so diverting the flow of the surface water were negligently and carelessly made, hence the damages, a very different cause is relied upon by the plaintiff for recovery than is assigned by the majority opinion as a right to a recovery. The evidence upon this point is conclusive of the theory upon which plaintiff relied for a recovery. Witness Jaynes for the plaintiff states as his evidence: "When they dumped the dirt on Third avenue, it did fill up my ditch. We had a sort of a drain, a little ditch in there, and that dirt—the dirt was thrown up there so that it just turned that water. The point of the dirt instead of draining the water this way (indicating) had turned it toward my yard, just the peculiar way it was dumped in there. I did not notice at the time that would be the effect of it, but it happened. This ditch . . . caused the water that was coming down this wash to come south of the way it originally traveled, some 35 or 40 feet, and then carried along First street." The plaintiff denied all knowledge of the conditions upon Third avenue. It was his opinion that the street was not filled up to the level of Jaynes' lots. He claims no interest in what was being done on that street. He stated: "I had no interest in touching

anything on Third street [corrected by him to Third avenue].
I had provided for the protection of my property in the first
place.'' No other evidence appears in the abstract of the
record upon this point. There is no evidence in the record
from which can be drawn the inference that the piles of earth
resulted in impounding the water into a basin or reservoir,
from which it flowed on to appellee's premises; but, on the
other hand, there is the above positive evidence, uncontra-
dicted in any part of the testimony, that the earth served to
divert the flow of the surface water from its course along
the ditch made by Jaynes to the appellee's premises.

It is clear that the plaintiffs relied upon the negligence
of the city in making improvements upon the street, and the
negligence relied upon was the failure of the city to furnish
a drain for the flow of surface water coming on to North
Third avenue from block 2, so as to prevent such surface
water from reaching his premises. In other words, the plain-
tiff seeks to maintain his right to be protected from the flow
of surface water, naturally falling upon adjoining premises,
by requiring the owner of such adjoining premises to so make
improvements that such improvements will not interfere with
the natural flow of surface water. Prevent, as it were, an
owner of adjoining lands from making such changes in the
surface of his lands as will change the natural flow of sur-
face water over such lands. This position, if maintained,
would charge the upper lands with a servitude to the lower
lands, which is not recognized under the common-law rule,
as is well established. The position is squarely within the
civil-law rule, which is not recognized in this jurisdiction.
Let us suppose that plaintiff could invoke such rule, then,
as the evidence in the case shows, the alley lying along the
east side of his lots belongs to the city, and, before Jaynes
or plaintiff improved their lots, a depression ran over Jaynes'
lots, over the alley and over the plaintiff's lots. By the rule
that requires the city to control the flow of surface water on
North Third avenue, and prevent it from flowing over ad-
joining premises to their injury, by this same rule, plaintiff
could require the city to prevent the surface water from
flowing from its alley on to his premises, or else pay damages.
Plaintiff could make ditches and embankments on defend-
ant's alley and recover the cost from defendant. No such

rule is recognized in this state. For these reasons I am unable to concur in the majority opinion.

The complaint fails to state a cause of action, and the judgment should be vacated and cause dismissed.

Application for rehearing denied.

NOTE.—The question of municipal liability for injury by embankment in street is treated in note in 20 L. R. A., N. S., 626.