[Civil No. 3891.   Filed October 25, 1937.]

[72 Pac. (2d) 676.]

JOHN GRANDE, Appellant, v. J. A. CASSON, THE ARIZONA STATE HIGHWAY COMMISSION, and THE STATE OF ARIZONA, Appellees.

Mr. Elmer Graham and Mr. Renz L. Jennings, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. A. R. Lynch, his Assistant, for Appellees.

LOCKWOOD, J.—This is an appeal by John Grande, hereinafter called plaintiff, from a judgment in favor of J. A. Casson, Arizona State Highway Commission, and the state of Arizona. The facts of the case, in so far as they appear in the abstract of record, may be stated chronologically as follows:

On the 18th of February, 1937, plaintiff filed a petition for a writ of garnishment, accompanied by a bond. The title of the petition was "John Grande, Plaintiff, v. J. A. Casson and the Arizona State Highway Commission, Defendants," and in the body thereof we may,

perhaps, gather that an action for damages had been previously filed by plaintiff against the two defendants named. Nothing, however, in the abstract shows the nature or allegations of the complaint on which the affidavit of attachment was apparently based. The next thing we find is a motion to quash a writ of garnishment, filed February 27th. The writ to which it refers does not appear in the record, but from the motion it may, perhaps, be thought that one was issued on the 19th of February against the treasurer of the state of Arizona, in the same action as that in which presumably the affidavit for attachment above referred to was filed. On the 4th of March, a demurrer and answer was filed, probably directed against the missing complaint above referred to. We next find that a document, entitled "First Amended Complaint," was filed on March 9th. For some reason, in addition to Casson and the Highway Commission, the state of Arizona itself appears as a defendant. On the 11th of March the state filed a special appearance for the purpose of objecting to the jurisdiction of the court. On the 16th of March there was a second amended application for a writ of garnishment. We presume a garnishment must have been issued on this application, for on the 18th of March the defendants moved that the writ issued on the 16th of March be quashed. It might, perhaps, be imagined that the garnishees had filed an answer to the writ on March 16th, although it does not appear in the abstract, for the reason that on March 22d plaintiff filed an affidavit contesting garnishees' answer, and tendering a pleading in support of such affidavit. This covers practically all of the pleadings found in the record. The minute entries show that on the 22d of March, the defendant's special appearance and objection to the jurisdiction, the motion to quash the writ of garnishment,

and the demurrer were argued, and on the 23d of March were taken under advisement. On the 26th of April they show the court sustained the demurrer to the complaint and granted the motion to quash the writ of garnishment, and plaintiff having elected to stand on his pleadings, on May 15th judgment was rendered that the plaintiff take nothing by his action, and that the defendants be allowed their costs.

There are three assignments of error. The first that the court erred in sustaining the demurrer to the complaint; the second, that it erred in quashing the writ of garnishment; and the third, that it erred in sustaining the plea of defendant, the state of Arizona, to the jurisdiction of the court.

It is somewhat difficult, after reading the pleadings and the briefs, to determine which assignment of error to consider first, in order that this opinion may be reasonably logical and clear; but, perhaps, it will be best to determine the sufficiency of the complaint first. There were two causes of action set up therein. In the first count the plaintiff alleges that the Arizona State Highway Commission is a body politic composed of five members, naming them, and the state of Arizona is a body politic incorporated, and that he complains of the commission, the state, and of one J. A. Casson, as follows. He then alleges that his suit is in damages, and for the ground thereof states that he has been the owner for about 20 years of certain lots in Railroad addition to the city of Douglas, abutting in part on the Sixteenth Street extension through such addition, with the appurtenant use of ingress and egress thereto to said Sixteenth Street extension; that on May 1, 1936, he was operating a mercantile, gasoline station and tourist camp on said lots, with a large investment, and making a good profit thereon. He then alleges that the Sixteenth Street extension had,

in some unnamed manner, become United States federal highway 80, the transition, however, being alleged to have occurred after plaintiff had acquired title to his lots, and that about May 1, 1936, the defendants entered upon said highway 80 and forcibly trespassed upon plaintiff's right of access thereto by, under pretext of opening, widening, altering, and changing said highway and improving the grade thereof, shutting off egress and ingress to plaintiff's lots over said highway 80 for some six months while the changing and improving of the grade was going on, to plaintiff's damage in the sum of $2,700.

For a second cause of action, which he alleges was against Casson, the state of Arizona, and the Arizona State Highway Commission, as a body politic, without naming the individual members thereof, he set up the same matters in regard to his ownership of the lots with the right of ingress and egress, and that the defendant Casson, acting in some relation to the other named defendants which was unknown to plaintiff, but with their active participation, erected a concrete curb from 18 inches to 3 feet in height along the edge of the highway next to plaintiff's property line, which blocked permanently ingress and egress to his premises from said highway 80, and altered and widened the grade of the street, and the sewer facilities which were then existent, to such an extent that the flood waters drained up and against the concrete curb on plaintiff's property, and stood thereon, and, because of the negligent manner of constructing the sewerage and drainage facilities by the defendants, the sewerage appurtenant to or adjacent to plaintiff's premises backed up and stood stagnant, emitting foul odors and stenches, and created a dangerous sanitary condition on and about plaintiff's premises to his damage in the sum of $5,300.

It will be seen on a consideration of these two counts that the first one, in substance, is for damages alleged to have been caused by the temporary blocking of plaintiff's right of ingress and egress during the alteration and changing of grade of federal highway 80; while the second is for an alleged permanent injury caused by two things: (a) The construction of a curb along the edge of the highway by plaintiff's property, which caused flood waters to back up on the property; and (b) the negligent construction of a sewer drain built by the defendants, which caused sewerage to stand and stagnate thereon.

The first question for us to consider is what, if any, right of action had plaintiff against the defendants or any of them, under the allegations of his complaint. Plaintiff apparently relies chiefly on the rule laid down by us in the case of *In re Forsstrom,* 44 Ariz. 472, 38 Pac. (2d) 878, 885. He contends that case holds that the obstruction of a right of ingress and egress to a public street, by the changing of the grade of the street and the work appurtenant thereto, made long after the street has been originally established, is a taking or damaging of property, within the meaning of section 17, article 2, of the Constitution of Arizona, and that he is entitled to recover damages therefor. We think plaintiff has failed to consider fully the rule laid down in the Forsstrom case. We did hold very definitely and specifically as follows:

"We are satisfied that the word 'taking,' when used in constitutions or statutes in regard to property, and particularly realty, includes the permanent taking or diminishing of any of the rights which one has by reason of and appurtenant to his ownership of the realty in question, as well as a deprivation of the title to the physical object."

And that the destruction or injury of a right of ingress and egress was included within the rights just

referred to. But we also held that, in the absence of a statute to the contrary, after a street had once been established, the public authorities had a right to change the grade without paying additional compensation to a property owner for an invasion of his right of access through the subsequent regrading, and used the following language:

"We have examined the text of Cooley on Constitutional Limitations and the cases therein cited on this question. Mr. Cooley says:

" ' . . . A strong inclination is apparent to hold that, when the fee in the public way is taken from the former owner, it is taken *for any public use whatever* to which the public authorities, with the legislative assent, may see fit afterwards to devote it, in furtherance of the general purpose of the original appropriation; and if this is so, *the owner must be held to be compensated at the time of the original taking for any such possible use;* and he takes his chances of that use, or any change in it, proving beneficial or deleterious to any remaining property he may own or business he may be engaged in. . . . ' (Italics ours.)

"In *Callender* v. *Marsh,* 1 Pick. (Mass.) 418, it is said: ' . . . The streets on which the plaintiff's house stands, had become public property by the act of laying them out conformably to law, and the value of the land taken must have been either paid for, or given to the public, at the time, or the street could not have been legally established. Being legally established, although the right or title in the soil remained in him from whom the use was taken, yet the public acquired the right, not only to pass over the surface in the state it was in when first made a street, but the right also to repair and amend the street, and for this purpose, to dig down and remove the soil sufficiently to make the passage safe and convenient. . . . '

"Justice Cooley in *City of Pontiac* v. *Carter,* 32 Mich. 164, cites approvingly the case just quoted from, and says:

" ' . . . When the land was taken for the street, if damages were assessed, they would cover this possible

injury, and it could never be known subsequently, that the jury in estimating them did not calculate upon a change in the grade of the proposed street as probable, and attach considerable importance to it in their estimate. It is a matter of common observation that much beyond the value of land taken is sometimes given in these cases; not because of any present injury, but because contingencies cannot be fully foreseen. And the rule in such cases is, that all possible damages are covered by the award, except such as may result from an improper or negligent construction of the public work, or from an excess of authority in constructing it. In other words, the award covers all damages resulting from the doing in a proper manner whatever the public authorities have the right to do, but it does not cover injuries from negligence, or from trespasses. (Citing cases). And one who gives his land for the purposes of a public way is supposed to contemplate all the same contingencies, and to make the gift on the supposition that the incidental benefits will equal or exceed all possible incidental injuries.'

''We are of the opinion that in reason and logic the reason for the rule that the grade of a street may be changed without paying compensation to the property owner for the invasion of his right of access is not that such an invasion is not a taking, or that the public has the right to deal with the street as its own regardless of the rights of the abutting property owners, but rather that the law presumes that, when the street is first laid out and the ground of the property owner taken or voluntarily given for that purpose, the compensation to which he is then entitled, and which will be given him if he desires it, pays not only for the original ground taken, but for any further taking of the easement of access which may be made necessary by subsequent changes in the grade of the street. Such being the law, in the absence of some specific provision to the contrary, the city of Tucson might alter the grades in question at pleasure, without the payment of further compensation therefor, for the reason that, when Stone avenue and Sixth street were first laid out, compensation was presumably made to

cover, not only the original grades, but any changes which might at a later time be made therein. The Legislature, however, of course has the right to grant additional compensation for the subsequent taking of property through the change in grade.''

We further held that so far as a change in grade by a municipal corporation of its public streets was concerned, the legislature had, in subdivision 17, section 408, Revised Code 1928, expressly provided that a grade should not be changed without making additional compensation for such damages as might have been caused by the change, using the following language: ·

''The Legislature has therefore expressly provided that, in case a *municipality* desires to take any part of the right of access to a lot, after a grade has once been established, it must pay such additional damages as may have accrued to the abutting property owner by reason of such additional taking.'' (Italics ours.)

In this case, however, it is not alleged nor does it appear that any municipality had anything to do with the changing of grades. The highway in question was not a street in an incorporated municipality, but was originally, according to the petition, merely a street dedicated to the use of the public in a platted piece of land, and which at some later time, without any objection from the plaintiff, became what he alleges to be a state or federal public highway, which, under our law, presumably means a part of the state highway system of the state of Arizona. In such a case, *in the absence of an express statute by the legislature providing that extra compensation shall be given for damage caused to the property owner by a change of grade,* he may not recover compensation therefor; it being presumed that such additional change of grade was contemplated and allowed for when the highway was first established. We hold, therefore, under the

authority of the Forsstrom case, that plaintiff cannot recover any compensation for damages to his right of ingress and egress caused by the change or alteration in the grade of a highway.

This disposes of the first cause of action. It did not state a cause of action against any of the defendants, for, according to its allegation, the state did no more than it had a right to do, without paying any compensation to plaintiff additional to that which presumably was received by him or his predecessors in interest at the time the Sixteenth Street extension was laid out, and when it was changed into highway 80.

■ We consider then the second cause of action. The allegation there is, in substance, that defendants did two things, by means of a concrete curb or wall and a negligently constructed sewer: (a) Causing flood water to drain on plaintiff's property; and (b) causing sewerage to back up on the property. What are the rights and liabilities of the state in regard to the backing up of flood waters through structures on the public highway? It will be noted that the plaintiff does not allege that the highway obstructed a definitely established water course through which the flood waters of the vicinity were accustomed to pass. Had it done so, another question might, perhaps, have required consideration. The allegation, however, can only be taken as referring to ordinary flood waters being backed up over plaintiff's premises by the concrete curb and by failure to provide drainage facilities whereby they might pass off. We have had the question of the right of property owners to build embankments to keep flood waters from adjoining lands off of their premises in the cases of *City of Tucson* v. *Dunseath*, 15 Ariz. 355, 139 Pac. 177, and *Gibson* v. *Duncan*, 17 Ariz. 329, 152 Pac. 856, 857. In the last-named case we say:

"The complaint seems to be drawn upon the idea that, inasmuch as the defendant's premises were lower than the plaintiff's, a duty was imposed by law upon the lower premises to permit the flow of surface and flood waters over the same. In other words, the plaintiff would adopt the civil law which recognized the dominant and servient estates with reference to surface waters. We do not think that to be the law of this state. On the contrary, in *City of Tucson* v. *Dunseath,* 15 Ariz. 355, 139 Pac. 177, we quoted, with approval, from *Walker* v. *New Mex. & S. P. R. Co.,* 165 U. S. 593, 17 Sup. Ct. 421, 41 L. Ed. 837, the following language:

"'One is under no obligation to receive from the other the flow of any surface water, but may, in the ordinary prosecution of his business and in the improvement of his premises, by embankments or otherwise, prevent any portion of the surface water coming from such upper premises.'"

The state was authorized to so embank its highway that surface water from other higher premises which would naturally flow on the highway would be prevented from doing so, and if incidentally, as a result thereof, waters were piled upon the premises, the defendant (the state) could not be held responsible therefor under the authority of the two cases above cited.

We consider next (b), the allegation that the defendants so negligently constructed a sewerage drain that the sewerage stagnated and emitted foul odors and created dangerous sanitary conditions. As we have stated, the public authorities are not liable to the abutting property owners, in the absence of a specific statute allowing for damages caused by injury to their means of ingress and egress through a change of grade or improvements on a highway previously established, and they are not bound to allow normal flood waters from adjacent land to flow over the highway, and may, by embankment or otherwise, keep them off of the highway, even if incidentally it causes those

flood waters to accumulate upon the lands where they originated. But if the highway authorities undertake to establish drains, culverts, and sewers under a highway, they must construct them in a reasonably careful and prudent manner so that they will fulfill the function for which they were designed. *Matson* v. *Dane County,* 172 Wis. 522, 179 N. W. 774. It is alleged in this case that the defendants did construct a sewer to care for the sewerage originating on plaintiff's premises, and, presumably, others as well, but that they did so in a negligent manner. If they did, we think plaintiff has stated a cause of action for damages for such negligent construction.

The next question, however, is, Against whom does his claim lie? He has sued three different parties. (a) The state of Arizona; (b) the Arizona State Highway Commission; and (c) J. A. Casson. So far as the state of Arizona is concerned, we think the action does not lie. It is the general and universally accepted rule that the sovereign state may not be sued without its own consent, and it is, of course, upon a plaintiff to show affirmatively that such consent was given. Plaintiff, of course, knows this rule and claims section 1572, subdivision 4 of section 1577, and section 4379, Revised Code 1928, authorize suits against the sovereign state. The complaint, so far as it is good, is not an action for the taking or damaging of property legally used in the construction of a public highway, where the property may be originally acquired by the state under the law of eminent domain upon making a due compensation therefor. If it were, the two sections first cited would be applicable. The only legal cause of action set up is one for the negligent construction of a sewer on a state highway. In other words, the action is for the negligent doing of an act otherwise lawful, and not for the taking of property for which compensation must be made. We have held in the case

of *State* v. *Sharp,* 21 Ariz. 424, 189 Pac. 631, that the state of Arizona has not waived its immunity from liability for the negligence of its agents, servants, or employees by reason of paragraph 1791 (Civ. Code), Revised Statutes of Arizona 1913, which is the same as section 4379, *supra.* The state, therefore, is not liable in its sovereign capacity for the negligent construction of a sewer by its agents, servants, or employees. The demurrer was properly sustained to the entire complaint so far as the state is concerned.

We consider next the Highway Commission. It will be noted the action was not against the five individual members of the commission, but against the commission itself as a body politic. While many of the agents of the state are, by law, created bodies politic with the right to sue or be sued in their official capacity, such as the University of Arizona, the Industrial Commission, and others, there is no provision authorizing suits to be brought by or against the Highway Commission in its official capacity. Section 1566, Revised Code 1928, reads as follows:

*"Duties of attorney general; other counsel.* The attorney general shall be the legal advisor of the department, and shall give such legal service as the commission or state engineer may require. He shall prosecute and defend in the name of the state all actions necessary to carry out the provisions of this chapter; provided, however, that upon request of the commission the attorney general shall designate for such time and purposes as the commission may require, an attorney whose compensation shall be fixed by the commission and shall be a charge against the state highway fund.''

Any action arising under or by reason of the Highway Code must be brought by or against the state itself, and not by or against the commission. So far as the right to sue or be sued is concerned, there is no such thing as the Arizona State Highway Commission.

The demurrer was properly sustained as to the commission, one of the other named defendants; there being no such legal entity in existence. Further than that, the commissioners individually only exercise governmental functions in the construction of highways. We have held, in the case of *Larsen* v. *Yuma County,* 26 Ariz. 367, 225 Pac. 1115, that a county and its officers were not liable for negligence in the building and maintaining of a public highway, and it would follow that the state and its officers, the Highway Commission, are not liable either. But if the contractor, the man who actually built the sewer, was negligent in the construction, and plaintiff was damaged by reason of such negligence, an action can be maintained against him.

There comes next the question as to whether the court erred in quashing the writ of garnishment directed to the Highway Commission and the state treasurer. The State Highway Commission, as such, is not and cannot be indebted to anyone, since there is no such legal body known to the law. The legislative authorities of the state have provided certain funds belonging to the state to be expended under the direction of the highway commissioners, but these funds are never in the hands of the commission, but always in the possession of the state treasurer to be paid out by him under the direction of the commissioners. If defendant Casson had any money due him for services performed under the direction of the Highway Commission, that money is in the hands of the state treasurer of the state of Arizona and he, of course, is the only one who could not and would not answer truthfully in denying that he held any money or funds due the defendant Casson. But is he required to answer to a garnishment? The ordinary rule, of course, is that the state and its officers who hold funds are not subject to garnishment, in the absence of a

statute expressly allowing it. Our legislature has made an exception to that rule, as it has the right to do, and in chapter 50, Session Laws of the 9th regular session of the legislature (1929) we find the following section:

"Section 1. The salaries of all officers, deputies, clerks and employees of the state of Arizona, or any of its political subdivisions, shall be subject to garnishment as hereinafter provided. Such garnishment shall not be construed as against public policy."

It will be noted that this referred only to the salaries of certain public officers and employees, and not to moneys due under contract with the state. We think that an exception should not be extended beyond its reasonable terms, and that chapter 50, *supra,* does not authorize the garnishment of the state for moneys due under contracts of any nature, but applies only to wages and salaries. The court, therefore, properly quashed the writ of garnishment. This disposes of all the questions raised on the appeal.

The judgment of the superior court is reversed, and the cause remanded, with instructions to sustain the demurrers of the defendants the state of Arizona and the Arizona State Highway Commission, and to overrule the demurrer of the defendant Casson in so far as it applies to plaintiff's cause of action for the negligent construction of the sewer, and for further proceedings in harmony with the principles laid down in this opinion.

McALISTER, C. J., and ROSS, J., concur.