[Sac. No. 2552. Department One.—June 27, 1918.]

## E. O. LINDBLOM, Appellant, v. ROUND VALLEY WATER COMPANY (a Corporation), Respondent.

Waters and Water Rights — Watercourse Defined—Runoff from Annual Rains and Snow Flowing in Defined Stream.—Water consisting of the runoff from the usual and annually recurring fall of rain and snow, draining from the surrounding hills into and through a canyon, in a well-defined channel, constitutes a watercourse, to which a riparian owner's rights attach.

Id.—Flow not Necessarily Continuous.—It is not necessary to the existence of a watercourse that the flow should be continuous throughout the year.

Id.—Action to Restrain Interference With Flow—Nonexistence of Stream—Finding Contrary to Evidence.—Where, in an action against a water company to restrain interference with the flow of water in what was alleged to be a natural stream, the evidence showed that defendant was maintaining a reservoir by means of a dam in a canyon, into and through which canyon there was a flow of water consisting of the usual and annually recurring fall of rain and snow which drained from the surrounding hills, and that the stream formed by this water carried a substantial current during the season of rainfall and thereafter while the snows in the surrounding mountains were melting, beginning to run about November or December, although ceasing entirely about June, as the dry season advanced, a finding that there was no stream or watercourse in the canyon was contrary to the evidence.

Id.—Natural Watercourse—Character not Lost by Long-continued Diversion.—If a canyon is in fact a watercourse under natural conditions, it does not lose that character by a mere diversion,

however long continued, although the rights of a riparian owner
may be subordinated to those of the appropriator.

ID.—APPROPRIATOR'S RIGHT—FORFEITURE BY NONUSER — ABANDONMENT
—DISTINCTION BETWEEN—INTENT.—Section 1411 of the Civil Code
providing that "the appropriation must be for some useful or bene-
ficial purpose, and when the appropriator or his successor in in-
terest ceases to use it [the water] for such a purpose, the right
ceases," lays down a rule for the forfeiture of a right by non-
user, which is entirely distinct from abandonment, which depends
upon proof of an intent to relinquish permanently the possession
and enjoyment of a property right.

ID.—EVIDENCE OF INTENT TO ABANDON—NONUSER.—Nonuser affords evi-
dence from which the intent to abandon may be inferred, but nonuser
for a sufficient period ends the right, regardless of the appropri-
ator's intent.

ID.—LIMITATION OF USUFRUCTUARY RIGHT — PRESCRIPTION.—Where a
valid appropriation had been made by a water company of water
flowing in a natural watercourse, while the land below the point
of diversion was still a part of the public domain, and a part of
the land bordering on the stream below had since passed into the
ownership of one claiming a superior right in the flow as against
the right of the appropriator, who, it was asserted, had failed to
apply the water to a beneficial use, the appropriator's position was
not strengthened by resting its right on prescription, since all such
appropriator could acquire by diverting or impounding the water
was a usufructuary right and not an ownership in the *corpus* of
the water, except perhaps so much thereof as it had actually reduced
to possession in its reservoir.

ID.—STORAGE OF WATER IN RESERVOIR NOT A BENEFICIAL USE.—Storage
of water in a reservoir is a mere means to the end of applying
it to a beneficial use, and not in itself a beneficial use.

ID.—WATER IMPOUNDED IN EXCESS OF BENEFICIAL USE—EVIDENCE—
FINDING.—Evidence in an action by a riparian proprietor against
an appropriator of water examined and found insufficient to sus-
tain a finding that the defendant and its predecessors had, for
more than forty years, continuously applied all the water impounded
by it to useful and beneficial purposes.

ID.—RIGHT OF RIPARIAN OWNER IN EXCESS.—In such case the riparian
owner below the point of diversion is entitled to insist that the
appropriator shall permit the escape into the canyon constituting
the watercourse of the natural flow over and above what is re-
quired to enable the appropriator to meet its reasonable needs,
measured by its maximum requirements during the five years pre-
ceding the commencement of the action.

APPEAL from a judgment of the Superior Court of
Plumas County.  H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

R. H. Cross, and Arthur H. Brandt, for Appellant.

W. H. Spaulding, for Respondent.

SLOSS, J.—The defendant has for many years maintained a reservoir in Round Valley, Plumas County, impounding water by means of a dam at the head of North Canyon, a narrow ravine leading from the northerly end of the valley. Sales of water so stored have been made from time to time to consumers at various points below the dam. When this action was commenced the plaintiff was in possession, under the then owner, of certain mining property situate in North Canyon, a short distance below the defendant's dam. Pending the suit, plaintiff has acquired title to such property.

The action was brought upon the theory that plaintiff's land was riparian to a natural stream running through North Canyon, and that defendant was controlling water impounded by its dam in such manner as to invade plaintiff's riparian rights. Judgment was entered in favor of the defendant, and the plaintiff appeals.

It will not be necessary, for present purposes, to recite the allegations of the pleadings, or to refer to any of the findings, except those which are made the basis of attack by the appellant. These findings are, in effect, that there is no stream or watercourse in North Canyon, as alleged by the plaintiff; and that defendant and its predecessor have for more than forty years last past continuously applied all of the water in the reservoir to useful and beneficial purposes.

There is little conflict in the evidence. It appears that the reservoir site covers some four hundred acres. The country is mountainous, the surface of the reservoir being at an elevation of over four thousand feet. The fall of rain and snow on the surrounding hills drains naturally into Round Valley. Whether or not this water reaches the valley through well-defined streams—on this there is some conflict in the testimony—the record leaves no room for doubt that, before any dam was constructed, there was, in the winter and spring of each year, a discharge of a stream of water from the northerly end of the valley into and through North Canyon. This stream was of the character familiar in this state, and in

other semi-arid regions. It carried a substantial current of water during the season of rainfall, and thereafter while the snows in the surrounding mountains were melting, but the flow ceased entirely as the dry summer season advanced. In ordinary seasons water began to run in November or December, and ceased about June. The bottom of North Canyon bore every aspect of a well-defined stream channel. It is, of course, not necessary to the existence of a watercourse that the flow should be continuous throughout the year. (*Lux* v. *Haggin,* 69 Cal. 255, 417, 418, [4 Pac. 919, 10 Pac. 674]; *Spangler* v. *San Francisco,* 84 Cal. 12, [18 Am. St. Rep. 158, 23 Pac. 1091]; *Los Angeles Cemetery Assn.* v. *Los Angeles,* 103 Cal. 461, [37 Pac. 375]; *Huffner* v. *Sawday,* 153 Cal. 86, [94 Pac. 424].) The finding that North Canyon was not a watercourse was, apparently, based upon the theory that the waters running down the ravine were flood waters, and hence not a part of the stream to whose flow the riparian owner was entitled. (*Gallatin* v. *Corning Irr. Co.,* 163 Cal. 405, [Ann. Cas. 1914A, 74, 126 Pac. 864].) But the record does not support this theory. The evidence is clear to the effect that the water running into Round Valley (and, except as intercepted by the defendant, down North Canyon) consisted of the runoff from the usual, and annually recurring, fall of rain and snow. Such water, when running in a defined stream, constitutes a watercourse to which the riparian proprietor's rights attach. (*Miller & Lux* v. *Madera etc. Co.,* 155 Cal. 76, 77, [22 L. R. A. (N. S.) 391, 99 Pac. 502], and cases cited.) The first of the findings assailed must, therefore, be held to be contrary to the evidence. If North Canyon was, under natural conditions, a watercourse, it would not lose that character by a mere diversion, however long-continued, although the rights of the riparian owner might be subordinate to those of the appropriator. We are brought, then, to the consideration of the second of the findings above mentioned, the one which declares that defendant has for many years applied all the water to useful and beneficial purposes.

A dam was first built across the mouth of North Canyon in 1861 or 1862. It was washed out soon after, and another, constructed to replace it, was also carried away. Thereafter a third dam was built by Judkins and Kellogg for the purpose of storing water for sale to mines in the vicinity. In

1876, the defendant purchased the rights of Judkins and Kellogg, and it has been in possession of the property ever since. During all the intervening period it has maintained the dam and the reservoir, and has sold water for the generation of power to mines at various points below the dam. During all this time it has claimed and exercised the right to control all the water coming into its reservoir. At times it has discharged surplus water into North Canyon through a pipe or, later on, through a spillway. But such discharge has been absolutely controlled by it, and has been resorted to when it seemed advisable to lower the surface of the reservoir for the protection of the dam. In selling water to consumers defendant has acted as a public service corporation, receiving the rates fixed from time to time by the county board of supervisors.

The plaintiff went into possession of the property now owned by him some months before the commencement of the action. At first he took water from the defendant, paying the regular rates therefor. Thereafter he refused further payment, and the resulting controversy finally culminated in the institution of this action, in which he sought, among other things, an injunction restraining the defendant from cutting off the flow of water to his mining property.

About 1883 the defendant had strengthened and enlarged the dam, thereby increasing the storage capacity of its reservoir. It was then serving water to a considerable number of mines, and their requirements were such as to fairly consume the flow which the reservoir could furnish. This state of facts continued, as is conceded by the appellant in its brief, for a sufficiently long period to give the defendant "an appropriative right to all the water draining from the Round Valley watershed to the full extent of the capacity of the reservoir." The appellant further admits, as, under the concession just quoted, he necessarily must, that the defendant's diversion and impounding of the water was *at one time* under a right paramount to the rights of the plaintiff as a riparian proprietor on North Canyon. The sole contention in this regard is that the defendant has, by failing for five years to apply the whole of the water so impounded by it to a useful and beneficial purpose, lost the right it once owned and enjoyed. Section 1411 of the Civil Code provides that "the appropriation must be for some useful or beneficial pur-

pose, and when the appropriator or his successor in interest ceases to use it for such a purpose, the right ceases.'' In *Smith* v. *Hawkins,* 110 Cal. 122, [42 Pac. 453], it was held that this section lays down a rule for the forfeiture of a right by nonuser. Such forfeiture is entirely distinct from abandonment, which depends upon proof of an intent to permanently relinquish the possession and enjoyment of a property right. (*Utt* v. *Frey,* 106 Cal. 397, [39 Pac. 807].) Nonuser affords evidence from which the intent to abandon may be inferred; but it is merely evidence of such intent. Under section 1411, however, nonuser ends the right, regardless of the appropriator's intent.

The section does not prescribe any length of time during which the nonuser must continue, but in *Smith* v. *Hawkins* the court, applying the analogy of the statutes relating to adverse possession and prescription, laid down the rule that the right was lost by a failure, for a period of five years, to apply the water to a useful or beneficial purpose. On a second appeal in the same case the court restated the doctrine, and extended its application to a partial failure to apply water to a beneficial use, declaring that the appropriator could hold, as against one subsequent in right, ''only the maximum quantity of water which he shall have devoted to a beneficial use at some time within the period by which his right would otherwise be barred for nonuser.'' (*Smith* v. *Hawkins,* 120 Cal. 86, [52 Pac. 139].)

The theory underlying section 1411, as intrepreted in these cases, is thus explained in the decision on the first appeal in *Smith* v. *Hawkins*: ''Considering the necessity of water in the industrial affairs of this state, it would be a most mischievous perpetuity which would allow one who has made an appropriation of a stream to retain indefinitely, as against other appropriators, a right to the water therein, while failing to apply the same to some useful or beneficial purpose.'' (110 Cal. 127, [42 Pac. 454].) The reasoning is as applicable to the situation of the parties in this case as it was to that of the opposing claimants in *Smith* v. *Hawkins.* There, as here, a valid appropriation had been made while the land below the point of diversion was still a part of the public domain. There, as here, a part of that land, bordering on the stream, had passed into the ownership of one claiming a superior right in the flow as against the prior appropriator

who, it was asserted, had failed to apply the water to a beneficial use. The defendant's position is not strengthened by resting its right on the basis of prescription. All it could acquire, by diverting or impounding the water, was a usufructuary right (Wiel on Water Rights, 3d ed., sec. 18), not an ownership in the *corpus* of the water, except, perhaps, so much thereof as it has actually reduced to possession in its reservoir. The matter here in dispute is not the ownership of any particular quantity now impounded, but the right to dam and control the water as it runs into and through Round Valley. Storage of water in a reservoir is not in itself a beneficial use. It is a mere means to the end of applying the water to such use. (Kinney on Irrigation, 2d ed., p. 1480.) The defendant's prescriptive rights do not extend to the impounding of the water for the mere purpose of holding it in storage. If, then, the defendant has ceased for a period of more than five years to apply to a beneficial use any part of the water so retained and impounded by it, the considerations of public policy pointed out in *Smith* v. *Hawkins, supra,* demand that it shall not be permitted to continue the diversion and storage of the excess over its legitimate needs, and thus prevent the application of such excess to the needs of others who, if there had been no impounding by the defendant, would have been entitled to use it.

The evidence in this case fairly shows that for a period of more than five years before the commencement of the action the defendant had not applied to beneficial uses all of the water so impounded by its dam and reservoir. While there is some suggestion in the evidence that the defendant supplied water for irrigation, as well as for mining purposes, the record indicates very clearly that the service of water for irrigation was too trifling to be worth considering. Substantially the sole use was for mining purposes. As we have said above, this use was at one time sufficient to call for the entire capacity of defendant's works. But from about 1890 there was a marked decrease in the number of mines supplied by the defendant. Some of the mines were closed, and the demand on the defendant for water became and remained much less than it had been. The testimony elicited from defendant's own witnesses shows, without substantial conflict, that for many years the Round Valley Water Company had been selling considerably less than the amount of water which, on

an average, its reservoir was capable of supplying each day through the year. We recognize, of course, that a water company supplying a public use is entitled to divert and impound water in excess of its exact daily requirement at a given time. Provision may be made to cover loss or wastage in transmission, and reasonably anticipated growth of demand. So, too, the company should be permitted to store a surplus to meet emergencies, such as a diminution of the supply which may occur from time to time in years of light rainfall. But, making all allowance for these factors (none of which was fully developed in the evidence), the record as it now stands forces the conclusion that for more than the statutory period there had been an impounding and control of an amount of water substantially in excess of the reasonable requirements of the defendant. The finding that for more than forty years last past the defendant and its predecessors had continuously applied all of the water to useful and beneficial purposes is, therefore, not sustained by the evidence.

In so far as the right to any of the water had been forfeited by nonuser, the plaintiff would be entitled to have the amount so forfeited flow down the stream in its accustomed course. This does not mean that the plaintiff may claim any benefit from the maintaining by the defendant of its dam and reservoir. He is not in a position to demand that the defendant shall, by its artificial works, furnish a constant flow of water in North Canyon throughout the year. His only rights are those which he would have had under the natural conditions existing before the dam was erected, subject to the deduction of so much of the water as defendant has continuously applied to a beneficial use. In other words, he cannot require the defendant to discharge any water into the stream during those months in which there would be no flow if no dam had ever been built. He may merely insist that, during the months of natural flow, the defendant shall permit the escape into the canyon of the surplus of the natural flow over and above what is required to enable the defendant to meet its reasonable needs, measured by its maximum requirements during the five years preceding the commencement of the action.

The respondent contends that a certain deed made to the defendant by plaintiff's predecessors in interest granted, at least by necessary implication, the right to maintain the dam

and reservoir in the manner in which they had been maintained, and estopped the plaintiff from objecting to the defendant's conduct. No right based upon this deed was set up in the defendant's answer, nor is there any finding bearing upon this claim. We do not, therefore, find it necessary to consider whether the deed, properly construed, has the effect claimed for it. If, upon another trial, the defendant desires to rely upon this ground of defense, it should make application to the court below for leave to amend its answer accordingly.

The judgment is reversed.

Shaw, J., and Richards, J., *pro tem.,* concurred.

Hearing in Bank denied.