[L. A. No. 4719.  In Bank.—July 30, 1919.]

JANET THOMSON, Respondent, v. T. W. LA FETRA
et al., Appellants.

[1] TRESPASS — CHANGING OF COURSE OF SEASONAL WATERS — EREC-
TION OF WOODEN STRUCTURE—CASTING OF WATERS UPON LANDS OF
OTHERS—COMMON ENEMY RULE INAPPLICABLE.—The rule applica-
ble to waters which are a "common enemy" cannot be invoked in
favor of land owners who to prevent injury to their lands from
seasonal waters from a canyon erected a wooden structure which
turned the waters on to the lands of others, since the water not
being in any sense flood water, the changing of its course and
casting it upon other lands amounted to a trespass.

[2] WATER RIGHTS—COMMON ENEMY WATERS—APPLICATION OF RULE.
The rule applicable to waters which are a "common enemy" has
application only to flood waters in the strict sense, that is to say,
to waters escaping because of their height from the confinement of
a stream and running over the adjacent country.

APPEAL from a judgment of the Superior Court of Los
Angeles County.  Stanley A. Smith, Judge Presiding.
Affirmed.

The facts are stated in the opinion of the court.

John E. Daly and James H. Daly for Appellants.

E. H. Allen and Porter, Morgan & Parrot for Respondent.

LENNON, J.—This is an appeal from a judgment upon the
judgment-roll alone which shows that the defendants main-
tain a dam which prevents the entrance and flow of certain
surface waters upon and across their lands, and so diverts
these waters that they flow upon the land of the plaintiff.

The lands of the parties to the action are located near the
city of Glendora, in Los Angeles County.  The lands are
bounded on the north by a public highway which runs from
east to west.  The land of the plaintiff is situated several
hundred feet to the east of that of the defendants.  Some
distance to the north are foothills.  Seven hundred and fifty
feet directly north of the defendants' lands is the mouth
of a canyon.  Following heavy rains there is a stream in this

canyon, and, owing to the grade and to the fact that it follows the east wall of the canyon, this stream is given a southerly direction at the canyon's mouth. It originally proceeded in a southerly and southeasterly direction to a point four hundred feet north of the defendants' lands, where, owing to the heavy growth of native vegetation, it became completely diffused. The water continued, however, to follow the slope of the country to the south and southeast toward the lands of the defendants and some of it reached these lands. None of the water ever reached the plaintiff's land prior to 1915.

In 1900, a wooden flume was built to carry the water from the canyon. The flume was at that time carried no farther than the former point of diffusion. The land at this point was cleared of the native vegetation and placed under a state of cultivation. In 1905 or 1906, this wooden flume was extended to the public highway by the upper proprietors and by the county was continued by means of a culvert under the traveled portion of the highway which bounds the defendants' lands on the north. In 1914, this wooden flume was replaced by one of concrete of somewhat increased dimensions. The latter fact, however, did not materially alter the situation, for the wooden flume was large enough to carry any stream which has ever followed the course described.

Between the years of 1905 or 1906 and 1914, the defendants erected and maintained an earthen dam by which they sought to protect themselves from the water discharged from the flume. This dam was erected on the highway south of the point of discharge from the culvert, but north of the north line of the defendants' property. It appears that in the years 1907, 1911, and 1914, which were the only years between 1905 or 1906 and 1915 in which any appreciable amount of water was carried in the flume, this earthen dam did not prevent the flow of the water over the defendants' lands. In 1914, the defendants replaced the earthen dam with the structure here complained of, a substantial wooden affair five feet high and over three hundred feet long. This was built without the permission of the county authorities. This structure effectively turned the large volume of water carried by the flume following the heavy rains of 1915 and caused it to flow upon the lands of the plaintiff, where it occasioned the damage complained of.

With these facts as a basis, the plaintiff sought and secured injunctive relief and a judgment in the sum of $329 as damages. The defendants have appealed contending that the bulk of the water discharged from the flume would never have flowed naturally to their lands and that the upper proprietors had gained no prescriptive right to have this water carried off by them. With these contentions as a basis, they argue that they had no duty to receive the water which they describe as a "common enemy" to themselves and the plaintiff. They claim the right to repel this so-called "common enemy" by means of the dam in question and assert that any injury which may be occasioned the plaintiff thereby is *damnum absque injuria.*

[1] The rule applicable to waters which are a "common enemy" cannot be invoked under the facts of this case. [2] That rule has application only to flood waters in the strict sense, that is to say, to waters escaping because of their height from the confinement of a stream and running over the adjacent country. The waters here involved are not of that sort.

The water not being in any sense flood water, the defendants, by changing its course and casting it upon the lands of the plaintiff, were guilty of a trespass. The fact that the water may have threatened injury to the defendants affords no justification or excuse to palliate the wrong done. If the injury threatened to the defendants' lands was the result of wrongful artificial changes made by upper proprietors, resulting in an increased, accelerated, or concentrated flow of water upon and across the lands of the defendants, their remedy was to proceed by appropriate action against the wrongdoers to enjoin such changes or to have the nuisance abated, and not by an attempt to shift the burden of the wrong upon an innocent third party who but for their intervening willful act would have suffered no injury at all. (*Larrabee* v. *Cloverdale,* 131 Cal. 96, [63 Pac. 143]; *Castle* v. *Reeburgh* (Okl.), 181 Pac. 297.)

The damage suffered by the plaintiff not having resulted from a lawful act, it cannot be considered *damnum absque injuria.* The view which we have taken of the case makes it unnecessary for us to discuss and decide the plaintiff's contention that the upper proprietors had acquired a pre-

scriptive right to have the water in question carried off over the defendants' lands.

The judgment is affirmed.

Shaw, J., Wilbur, J., Lawlor, J., Melvin, J., Olney J., and Angellotti, C. J., concurred.