[Civ. No. 13147.   Second Dist., Div. Two.   Dec. 19, 1941.]

FRANKLIN H. MITCHELL et al., Respondents, v. CITY OF SANTA BARBARA et al., Appellants.

Norris Montgomery, City Attorney, for Appellants.

W. P. Butcher and A. D. Haines for Respondents.

McCOMB, J.—From a judgment in favor of plaintiffs after trial before the court without a jury in an action to recover damages for injury to real property from the diversion of waters from a natural stream, defendant city of Santa Barbara appeals.

The evidence being viewed in the light most favorable to plaintiff (respondent), the essential facts are:

Plaintiffs are the owners of a store building and furniture business located on the corner of Milpas and East Ortega

Streets in the city of Santa Barbara. Since man's memory runneth not to the contrary there has existed within the corporate city a series of foothills and mountains rising from the level land immediately north of Milpas Street and running in an easterly and westerly direction. These foothills and mountains are broken by a series of natural canyons and streams descending down the slopes of the foothills and from a watershed adjacent to and east of Milpas Street in defendant city and to some extent adjacent to and immediately north of what is known as Canon Perdido Street. These natural creeks, canyons and ravines, after leaving the watershed and foothills became tributary to a major natural water course or channel extending in a general north and south direction from a point on the north at approximately the intersection of Canon Perdido and Milpas Streets and to the south to a major basin extending over an area of about a quarter of a mile in diameter along the shores of the Pacific Ocean.

In the period of seasonal storms the waters from the watershed flow down from the creeks, canyons, and ravines into the natural water course and then into the basin, thereafter escaping into the Pacific Ocean. Prior to the alteration of this natural water course the seasonal waters had been carried into the basin and thence to the Pacific Ocean at a point which is now the southerly termination of Santa Barbara Street.

Defendant city, prior to the spring of 1938, raised the grade of certain streets that traversed the natural water course above described, thereby creating a series of dams, and also caused to be filled with rubbish and other debris a large portion of the land that formerly constituted the water basin above described.

Plaintiffs' premises are located to the northeast and contiguous to the natural water course heretofore mentioned. Due to the artificial changes in the natural water courses which defendant city had effected, storm waters in the early morning of March 2, 1938, accumulated upon the upper levels of the above described drainage area and large quantities of rain water, not being able to escape through the obstructed natural water course, inundated plaintiffs' property.

Defendant city relies for reversal of the judgment on these propositions:

*First: The waters which damaged plaintiffs' property were flood waters and defendant city was, therefore, not liable for the resulting damage to plaintiffs.*

*Second: The rain storm which caused the injury to plaintiffs' property was an act of God and, therefore, defendant city was not liable for the injury to plaintiffs.*

*Third: The "common enemy doctrine" was applicable to the facts of the instant case and relieved defendant city from any liability for injuries resulting to plaintiffs.*

*Fourth: Plaintiffs, having built their store at the level of the street curb with knowledge that storm waters had overflowed their premises were contributorily negligent and, therefore, not entitled to a judgment against defendant city.*

*Fifth: The court's finding that plaintiffs had been damaged in the sum of $6,384 finds no substantial support in the evidence.*

*Sixth: Plaintiffs were not entitled to recover for damage to furniture contained in their building, for the reason that such alleged damage was not specially pleaded.*

Defendant's first proposition is untenable. The law is established in California that, where surface waters have found for themselves a definite channel in which they are accustomed to flow, a municipal corporation is liable for damages which result because said corporation has obstructed the natural water course (*Conniff* v. *San Francisco,* 67 Cal. 45, 49 [7 Pac. 41]; *White* v. *City of Santa Monica,* 114 Cal. App. 330, 332 [299 Pac. 819]; *Jefferis* v. *City of Monterey Park,* 14 Cal. App. (2d) 113, 116 [57 Pac. (2d) 1374]; *Archer* v. *City of Los Angeles,* 19 Cal. (2d) 19 [119 Pac. (2d) 1].)

The rule is aptly stated in 18 Cal. Jur. (1924), 1102, sec. 352, note 4, thus:

"The general rule that municipal corporations, in the grading and improvement of streets, are not bound to provide for the escape of mere surface water, has an exception where the surface water, owing to the conformation of the adjoining country, has formed for itself a definite channel in which it is accustomed to flow, though such channel does not come within the common-law definition of a watercourse.

The term 'natural channel' may be construed as including all channels through which, in the existing condition of the country, water naturally flows.''

In the present case the trial court found that defendant city had obstructed a natural water course which diverted storm waters onto plaintiffs' land, thereby causing the injury of which plaintiffs complain. Under the foregoing findings of fact and rule of law above stated, the city was clearly liable for the damage suffered by plaintiffs.

Defendant's second proposition is also untenable. A rainstorm which is merely of unusual intensity is not an "act of God." (*Southern Pacific Co.* v. *City of Los Angeles,* 5 Cal. (2d) 545 [55 Pac. (2d) 847].) In the instant case substantial evidence was received to the effect that the rainstorm which was the cause of plaintiffs' damage was not of unusual intensity, there having been several rainstorms of the same or greater intensity during the years preceding the spring of 1938.

Defendant's third proposition is without merit. The "common enemy doctrine" applies only in cases where after water has escaped from a well defined channel and threatens damage to a property owner, the property owner without liability to himself may take reasonable means to protect his property, even though in doing so he may divert the water upon the lands of another. The water in such case being a common enemy to all property owners along the water course, each property owner has a right to protect himself against damage. In the instant case, however, the damage was caused by defendant city's obstructing a natural water course, thereby causing the water to flow upon plaintiffs' land. In such case it is the duty of the city to provide adequate drainage for the diverted waters, so as to prevent damage to adjacent property. (*Spangler* v. *San Francisco,* 84 Cal. 12, 17 [23 Pac. 1091, 18 Am. St. Rep. 158].)

Defendant's fourth proposition is likewise without merit. The trial court found, supported by substantial evidence, that plaintiffs were not contributorily negligent in erecting their buildings at the location and level they did. For example, there was testimony that plaintiff Franklin H. Mitchell had been told by the city engineer of defendant city that the water had been taken care of and that buildings

across Milpas Street from the location of plaintiffs' proposed buildings were on a set-back line flush with the sidewalks. This testimony of itself was substantial evidence to sustain the trial court's finding that plaintiffs were not contributorily negligent.

Defendant's fifth proposition is untenable and is controlled by the following rules of law:

(1) Damages which are the necessary consequence of the wrongful act can be recovered under the general allegation of the amount of damage inflicted. (*Gomez* v. *Reed*, 178 Cal. 759, 763 [174 Pac. 658].)

(2) Evidence received by the trier of fact in a "view" of the premises constitutes substantial evidence sufficient to support a finding of fact. In the present case the trial judge (the trier of fact) viewed the premises and thus was in a position to form his own opinion as to the extent of the damage suffered by plaintiffs, and, in the absence of a showing that the damages were excessive, which we do not believe to be the case, such finding is controlling on this court.

Defendant's final proposition is without merit. During the course of the trial plaintiffs asked and received leave to amend their complaint to conform to the proof relative to the damage to plaintiffs' furniture. No objection was made by defendant to such amendment nor did defendant request a continuance at the time said amendment was made. Therefore, it has utterly failed to show any prejudice resulting to it.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.