FOLEY, J. pro tem.*
Defendants appeal from a judgment enjoining them from continuing to maintain or here *3 after erecting or constructing any dike, barrier, or other obstruction on their lands designated as Lot 9, obstructing, concentrating, diverting or otherwise deflecting the natural flow of water from Salsipuedes Creek and watershed north of said lands of defendants over and across the lands of defendants, and ordering them forthwith to undertake and complete the removal from Lot 9 of all artificial dikes, levees, barriers, ditches and obstructions to the seasonal flow of waters of and from Salsipuedes Creek and watershed to the north of Lot 9, such dikes, levees, barriers, ditches and obstructions being all those now on Lot 9 in the area north of a point 100 feet south of the most northerly point on the common boundary line of defendants’ Lot 9 and plaintiff’s Lot 17 and that in so doing defendants refrain from spreading, but remove or clear all soil, silt, and debris forming such dikes, levees, barriers and obstructions from the area of defendants ’ Lot 9 lying north of a point 100 feet south of the most northerly point on the common boundary line of defendants’ Lot 9 and plaintiff’s Lot 17.
The complaint in this action filed on November 2, 1955, alleged that plaintiff and defendants were adjoining landowners, that plaintiff was the owner of a right of way over a portion of defendants’ property bordering on his own, and that defendants in 1955 placed obstructions across said right of way. He prayed for an injunction to compel defendants to remove said obstructions, to keep the right of way open, and for damages.
On September 11, 1956, after the unprecedented rainy season of December, 1955, plaintiff filed a first amended and supplemental complaint in which he repeated as Count I the allegations contained in his original complaint. He added a second count in which he alleged that the lands of the plaintiff and of the defendants are situated on the northerly boundary of a natural lake known as College Lake, that the natural seasonal drainage of waters into College Lake is principally from the north through Salsipuedes Creek, a seasonal wash or stream bed. He further alleged that immediately north of their lands the seasonal flow of water, confined in the creek, leaves any defined channel and spreads over the parties’ lands depositing sand, silt, and debris, thereby building and forming an alluvial cone extending over the northerly portion of the lands of both into College Lake. He alleged that in 1955 defendants constructed a dike near the common boundary of their lines lying within the alluvial cone and that in 1956 defendants constructed ditches across their land leading to plaintiff’s *4 land. He finally alleged that, as a result of defendants’ acts, the natural seasonal flow of the waters in Salsipuedes Creek and of surface waters across the alluvial cone have been interrupted, diverted, and concentrated on plaintiff's land as a result of which plaintiff sustains irreparable damage with no adequate remedy at law. He prayed for an injunction to compel defendants to remove the obstructions, ditches, and channels. An amendment to the supplemental complaint was later filed but this amendment did not materially change plaintiff’s causes of action or the relief sought.
Defendants filed their answer in which they denied the material allgations of the complaint.
Defendants filed an amended answer and cross-complaint in which they again denied the material allegations of the complaint and alleged, inter alia, that Salsipuedes Creek, a natural stream in a well defined channel and confined within well defined banks, has since time immemorial crossed plaintiff’s land and that if there is any alluvial cone, it is entirely on the land of the plaintiff and not on the land of the defendants.
With respect to the second count and as separate defenses, defendants alleged that: (1) The issues, having been previously determined in favor of defendants’ predecessor in title in the case of Leslie v. Lukrich, Santa Cruz County Action Number 23693, are res judicata; (2) For more than five years immediately preceding the commencement of the action, they and their predecessor have openly, notoriously, and adversely constructed and maintained a levee, at, near, and along their easterly boundary, and having paid all taxes and assessments on this improvement, they claimed a prescriptive right to maintain it; (3) The plaintiff without right claims the right to discharge flood, surface, and drainage water onto the defendants’ land.
In their cross-complaint, defendants alleged that: (1) In December of 1955, a bridge maintained on lands lying to the north of plaintiff’s land washed out, was carried downstream in the Salsipuedes Creek, and deposited in the creek channel on the plaintiff’s land; that said bridge interrupted the flow of water in the creek, caused the bed thereof to become filled with sand, etc., which, in turn, caused the waters of the creek in the rainy season to overflow upon the land of the defendants; that plaintiff has refused and continues to refuse to remove said bridge, as a result of which defendants will be irreparably damaged in that their farm land will be rendered permanently useless for agricultural purposes. They sought both damages *5 and an injunction to compel removal of the bridge; (2) In Leslie v. Lukrich, supra, Santa Cruz County Action Number 23693, the court perpetually enjoined plaintiff from diverting the waters of the creek from their natural channel onto the defendants’ land and from preventing the proper drainage of said land; that the lands referred to in the injunction are the same as those involved in the present action; that the defendants in the present action are the successors in interest of the plaintiffs in action Number 23693; and that the purpose of the dikes or levees is to prevent the waters of Salsipuedes Creek from being diverted from their natural channel so as to flow upon the defendants’ land and to prevent further interference with the proper drainage of said land.
The court entered its judgment granting both prohibitory and mandatory injunctive relief as hereinabove set forth on Count II; it also found in favor of defendants on Count I and against defendants on their cross-complaint. While the last amended notice of appeal states that the appeal is “from said Judgment and the whole thereof ...” defendants state in their opening brief that they have no quarrel with the judgment in their favor on Count I and they add that the appeal is directed to the judgment on the second count.
The issues on this appeal are as follows: (1) Is there evidence to support the findings of fact? (2) Do the findings of fact support the conclusions of law and judgment as rendered in favor of the plaintiff on the second count of plaintiff’s complaint? (3) Was Salsipuedes Creek as it entered and flowed across plaintiff’s land a natural watercourse or stream in December, 1955? (4) If a natural watercourse or stream, did defendants have the right to protect their lands against a change in channel resulting from extraordinary rains and flood conditions? If not a natural stream or watercourse, in view of the judgment in action Number 23693, did the defendants have the right as against plaintiff to protect their lands from any kind of water whether surface, flood, or stream?
Defendants attack many of the findings of fact as being unsupported by the evidence and as being inconsistent. They also attack many of the conclusions of law as being unsupported by the findings of fact. While there appear to be some inconsistencies in the findings of fact and in the conclusions of law they are not of sufficient substance to warrant a reversal in view of the well settled rule on appeal that findings are to be liberally construed and if possible any ambiguity *6 or inconsistency will be resolved in favor of sustaining the judgment.
There is however a very real and vital issue presented in connection with the sufficiency of the evidence to support the findings of the trial court that the construction by defendants of dikes, levees, and other obstructions on their land, Lot 9, have caused a diversion of the natural flow and drainage of waters entering College Lake onto the lands of the plaintiff.
The only evidence as to the diversion of water onto the plaintiff’s land as a result of the dikes, levees, and obstructions on defendants’ Lot 9 were the waters which came from the Salsipuedes Creek on December 24, 1955, and subsequent thereto, as a result of a break in the levee containing the creek in its channel on the Yoshida property, Lot 18, said lot lying and being immediately north and adjacent to plaintiff’s property, Lot 17, and immediately east and adjacent to the northerly portion of defendants’ Lot 9. Upon the determination of the character of these waters depends the result of this appeal.
In determining the character of these waters, consideration must first be given to the question as to whether or not Salsipuedes Creek as it flowed across Yoshida’s land and entered plaintiff’s land was a natural watercourse or stream in December of 1955.
It is undisputed that in December, 1955, and prior thereto for a number of years the channel of the Salsipuedes Creek, as widened and improved by Yoshida, carried water down and over Lot 18, the Yoshida property, and onto Lot 17, plaintiff’s property, for some distance to a point on plaintiff’s property where the water spread out. Until the water reached this point on plaintiff’s property, however, it was confined within the channel of Salsipuedes Creek.
Respondent concedes that the “Yoshida channel” was a natural channel as of September 19, 1950. The court found that said channel was artificially improved and maintained up to December 25, 1955. We must conclude therefore that the channel through the Yoshida property either in its natural state or as improved by Yoshida existed for at least five years.
In Chowchilla Farms, Inc. v. Martin, 219 Cal. 1, 16 [25 P.2d 435], the court quoting from Falcon v. Boyer, 157 Iowa 745 [142 N.W. 427], stated: “A watercourse is defined as a natural stream of water usually flowing in a definite channel having a bed and sides, or banks, and discharging itself into some other stream or body of water. It is not necessary that its origin be exclusively the work of nature. *7 It may be aided by the hand of man; but if thereafter it becomes a living, flowing stream of water, with all the essential elements of a watercourse, and has remained in such condition for the prescriptive period, then, as to parties through whose land it runs, and as to their rights, it becomes a watercourse. ...”
“ A stream is a watercourse having a source and terminus, banks and channel, through which waters flow, at least periodically. Streams usually empty into other streams, lakes, or the ocean, but a stream does not lose its character, as a watercourse even though it may break up and disappear.” (Mogle v. Moore, 16 Cal.2d 1, 9 [104 P.2d 785].) It seems evident that as of December, 1955, Salsipuedes Creek was a natural watercourse on Lot 18, the Yoshida property, and up to the point, at least, on plaintiff’s property, Lot 17, where the water spread out.
The evidence is undisputed that as a result of extraordinary rains in December, 1955, the waters in Salsipuedes Creek broke out of their channel at a sharp bend on Lot 18, the Yoshida property, and were carried towards Lot 9, the lands of defendants. Some of the water flowed onto defendants’ property while other water was diverted southward after hitting defendants’ dike. These waters were clearly flood waters.
"Flood waters are . . . correctly described in 26 California Jurisprudence 280; ‘Flood waters are distinguished from surface waters by the fact that the former have broken away from a stream, while the latter have not yet become part of a watercourse. The term ‘‘flood waters” is used to indicate waters which escape from a watercourse in great volume and flow over adjoining lands in no regular channel, though the fact that such errant waters make for themselves a temporary channel or follow some natural channel, gully or depression does not affect their character as flood waters or give to the course which they follow the character of a natural watercourse. ’ ” (Mogle v. Moore, supra, 16 Cal.2d 1, 9.)
A landowner may protect himself by any reasonable means he has available from the onslaught of flood waters. In Weinberg Co. v. Bixby, 185 Cal. 87, 95 [196 P. 25], the court stated: ‘ ‘ The doctrine of the common law relating to protection against flood overflow of rivers, and which has been adopted by the California courts, recognizes such flood waters as a common enemy which may be guarded against or warded off by one whose property is invaded or threatened, by obstructions which are merely defensive in their nature and not cal *8 culated to interefere with the current of the water in its natural channel.”
“ [0]ne has the right to protect himself against flood waters . . . and for that purpose to obstruct their flow on to his land and this even though such obstruction causes the water to flow on the land of another. [Citations.]” (Horton v. Good-enough, 184 Cal. 451, 453 [194 P. 34].)
In the last cited case of Horton v. Goodenough, in a situation somewhat similar to the present one, the court at page 457 stated: “The legal question presented is, Has a land owner below such a break the right to protect his land against the water coming through it, even though his doing so has the effect of causing the water to seek an outlet over the land of a neighbor ?
“To this question we can see but-one answer, and that is that he has such right. The waters are plainly flood waters breaking out of their channel and running wild, and as such each property owner threatened has the right to protect himself against them as best he can. ...” And again in the same case at page 458 the court stated: “Nor is the fact material that the waters have made for themselves a channel or follow some natural channel, gully, or depression, and now come to defendants’ lands as a stream instead of spreading out over the ground. The waters do not come as the stream of a natural watercourse following its accustomed channel, but as a stream which has escaped from such a channel and is following a new and unaccustomed course. The fact that in their course they make a channel or perhaps follow some natural runway made by surface waters does not change their character or give to the course which they follow the character of a natural watercourse. ’ ’
During the trial it was stipulated in effect that no part of Salsipuedes Creek flowed on or across defendants’ land.
Plaintiff in support of his argument that the waters are not flood waters cites and relies upon Everett v. Davis, 18 Cal.2d 389 [115 P.2d 821], Thomson v. La Fetra, 180 Cal. 771 [183 P. 152], Costello v. Bowen, 80 Cal.App.2d 621 [182 P.2d 615], and Williams v. Pacific Coast Aggregates, Inc., 128 Cal.App.2d 777 [276 P.2d 28].
None of these cases is in point. Everett v. Davis, supra, 18 Cal.2d 389, held that the waters there under consideration were not flood waters because the element of abnormality of escape from a stream was not present. Here we have that element of abnormality present.
*9 In Thomas v. La Fetra, supra, 180 Cal. 771, the court pointed out that the waters there involved were not flood waters for the reason that, they did not escape because of their height from the confinement of a stream. In the instant ease the waters did as a result of extraordinarily heavy rains escape from the confinement of a stream.
In Costello v. Bowen, supra, 80 Cal.App.2d 621, the defendants were enjoined from maintaining a dam across a natural watercourse. That case was not concerned with water escaping from a break in the levee of a natural watercourse.
In Williams v. Pacific Coast Aggregates, Inc., supra, 128 Cal.App.2d 777, the case was tried and decided upon a theory of negligence.
Since we have concluded that Salsipuedes Creek was a natural watercourse or stream, and that the waters diverted onto plaintiff’s lands were flood waters from said stream, it is not necessary to discuss the effect of the judgment in action Number 23693 except to state that it would not be a bar to the present action for the reason that the court was there concerned with affirmative action taken by Lukrich which caused the waters flowing onto his property, Lot 17, from Salsipuedes Creek to flow onto Lot 9, the property of defendants herein. It might be noted, however, that the aforesaid judgment and the written stipulation upon which it ivas based established as of September, 1950, the date of said judgment, the fact that there was then a natural channel of Salsipuedes Creek on the land of respondent herein, which fact is also confirmed in the findings of the trial court in the present action.
The present condition of which respondent complains apparently arises from the fact that the channel on the Yoshida property has silted full as a result of the breakthrough of December, 1955, and the failure to restore the channel to its former condition. However, we fail to see how or why any condition created subsequent to and as a result of the breakthrough in the levee on the Yoshida property can affect the nature of that breakthrough with its accompanying results. When the levee on the Yoshida property broke in December, 1955, the waters escaping through that break were flood waters against Avhich appellants were entitled to protect their lands. The fact that thereafter and as a consequence of that breakthrough and the protective measures taken by appellants the channel silted full cannot have a retroactive effect on either the character of the escaping waters or the right of appellants to guard against them.
*10 As stated in Horton v. Goodenough, supra, 184 Cal. 451, 459, "It is, however, possible that it may be diverted by natural means. The danger of this happening is one common to all the lands immediately below, and if the threat becomes a reality and the stream or part of it does shift, it would be both unjust and unpractical not to permit the particular land owner whose property is invaded to protect himself as best he may. There is no reason why he should bear the entire burden of what is a common danger. Every reason which induced the adoption of the rule as to flood waters in the first instance applies here.”
We conclude therefore that there is no substantial evidence to support the findings of the trial court that the construction by defendants of dikes, levees, and other obstructions have caused a diversion of the natural flow and drainage of waters entering College Lake onto the lands of plaintiff.
The judgment insofar as it grants prohibitory and mandatory injunctive relief in favor of respondent and against appellants is reversed.
Bray, P. J., and Tobriner, J., concurred.

Assigned by Chairman of Judicial Council.