[Civ. No. 25751. First Dist., Div. One. Dec. 5, 1969.]

ROELOF VAN ZYL, Individually and as Executor, etc.,
Plaintiff and Appellant, v.
GEORGE SPIEGELBERG et al., Defendants and Respondents.

COUNSEL

Berns & Steinberg and Ralph J. Steinberg for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel and John W. Appel for Defendants and Respondents.

OPINION

**MOLINARI, P. J.**—This is an appeal by plaintiff from a judgment of nonsuit entered in favor of defendants.

Plaintiff and defendants own adjoining property in a mountainous and forested area near Boulder Creek. Defendants' lot is about one acre in size with its east boundary parallel to a road called West Road and its west boundary adjoining plaintiff's lot. Defendants' residence, garage and swimming pool are located on a level part of the property with the western portion of the lot sloping down toward plaintiff's property.

A stream or creek channel passes through defendants' lot in a general north-south direction. This channel originates above the lot to the north, comes down the mountain, and before it reaches defendants' property is fed by various drainage systems and passes through heavily wooded and overgrown areas. Waters flow through the channel from the first of the rainy season in the mountains, which normally commences in October, until June or July, when the channel becomes dry. During the rainy season storms are common. Because of the storms, the water in the channel can be transformed very quickly from a trickle to a rampaging stream.

Within the boundaries of defendants' property a solid-fill driveway crosses the channel providing defendants with access to and from West Road. This fill driveway dams the channel with the exception of a two-foot diameter pipe which runs through to the driveway for the purpose of permitting the passage of water from the channel on the north side of the driveway to the continuation of the channel on the south side.

In the fall of 1962 defendants' property was partially flooded during the first rainstorm of that season. The water level was such that defendants summoned the Boulder Creek Fire Department for emergency assistance. The overflow was due, in part, to the sudden release of water from a building pad directly above defendants' property which occurred when the beam around this pad let go in several places. With respect to this occurrence there was conflicting testimony as to whether debris plugged the culvert and thereby contributed to the overflow. According to defendant

George Spiegelberg, the water was coming through the creek very rapidly and through hydraulic action caused erosion of the stream bank. This erosion, in conjunction with the water released from the pad above defendants' property, caused the overflow. According to other testimony from a member of the Boulder Creek Fire Department debris clogging the driveway pipe impeded the flow of the stream.

During the remainder of the 1962-1963 rainy season and in subsequent seasons, Spiegelberg and a neighbor undertook foot patrols along the banks of the channel above and below his property because of their awareness of the serious danger to themselves and absentee neighbors that could arise if the culvert became blocked by limbs or debris and overflowed.

In January 1967 heavy rain fell in the Boulder Creek area for two days prior to January 21 on which day, at about 7:30 a.m., a flooding of defendants' property occurred. A redwood log measuring 27 inches in length and 22 inches in diameter somehow came down stream and blocked defendants' 24-inch culvert, thereby damming and diverting the flow of the stream causing the water to overflow defendants' property. This water flowed across defendants' yard and down the slope below the yard onto plaintiff's property. Defendants made an emergency call to the Boulder Creek Fire Department, which responded almost immediately. In order to try to get the water back into the channel the building of a dam was attempted and a ditch was dug across the top of the driveway which prevented further overflow and kept the water in its old channel. While the firemen were so engaged, a large soil mass on the western edge of defendants' property, saturated by the heavy flow of diverted waters, tore loose and slid down the western slope of defendants' lot onto plaintiff's lot with sufficient force to cause heavy damage to his property, including the guest house, retaining wall, driveway, and two automobiles.

Plaintiff thereupon instituted the instant action for damages based on a complaint alleging a cause of action in two counts, one based on negligence and the other on nuisance. When the matter came on for trial by a jury defendants made a motion for nonsuit following the presentation of plaintiff's case. The motion was granted and this appeal ensued. Plaintiff contends that under applicable law sufficient evidence was presented below to support a verdict in his favor.

At the outset we note that the judgment of nonsuit operated as an adjudication upon the merits. (Code Civ. Proc., § 581c;[1] *Grable* v. *Martin,* 193 Cal.App.2d 241, 242 [14 Cal.Rptr. 275].) Although the judgment of

---

[1]Section 581c of the Code of Civil Procedure provides: "After the plaintiff has completed his opening statement, or the presentation of his evidence *in a trial by jury,* the defendant, without waiving his right to offer evidence in the event the motion is

nonsuit is an adjudication upon the merits it is not treated on appeal like most appeals when it is the duty of the appellate court to indulge every reasonable intendment in favor of sustaining the trial court. The appropriate rule which the reviewing court must follow is that the court must view the evidence in the light most favorable to the appellant, must disregard all inconsistencies and draw only inferences from the evidence which can reasonably be drawn which are favorable to the appellant. (*Golceff* v. *Sugarman,* 36 Cal.2d 152, 153 [222 P.2d 665]; *Bartosh* v. *Banning,* 251 Cal.App.2d 378, 383 [59 Cal.Rptr. 382].) ■ It is only when the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff that the granting of a motion for nonsuit is warranted. (*Raber* v. *Tumin,* 36 Cal.2d 654, 656 [226 P.2d 574]; *McCafferty* v. *Gilbank,* 249 Cal.App.2d 569, 571 [57 Cal.Rptr. 695].)

■ We also observe, initially, that although the complaint in the instant action purports to state two causes of action, that is, one based on nuisance and the other on negligence, it actually states one cause of action in two counts. The gist of each count is that defendants "constructed and/or maintained" the subject driveway in such a manner as to obstruct the channel and divert the water from said channel onto plaintiff's property to plaintiff's damage. In the first count it is alleged that conduct constituted a private nuisance; in the second, that such conduct constituted negligence in the construction, design and maintenance of said driveway. The complaint thus alleges only one cause of action because it alleges one primary right, that is, plaintiff's right to the unimpaired ownership and undisturbed enjoyment of his premises; a corresponding duty, that is, an obligation on the part of defendants not to interfere with that right; and a breach of that duty by defendants. (See *Frost* v. *Witter,* 132 Cal. 421, 426 [64 P. 705, 84 Am.St.Rep. 53]; *Smith* v. *Minnesota Mut. Life Ins. Co.,* 86 Cal.App.2d 581, 590 [195 P.2d 457]; *Work* v. *County Nat. Bank etc. Co.,* 4 Cal.2d 532, 540 [51 P.2d 90].) Accordingly, what plaintiff seeks is to recover in damages under the same state of facts but under different theories of recovery, that is, private nuisance and negligence. In such a case there is but one cause of action. (See *Shell* v. *Schmidt,* 126 Cal.App.2d 279, 291 [272 P.2d 82].)

We note, further, Prosser's observation that there is confusion with respect to the relationship between nuisance and negligence:[2] "[N]uisance

---

not granted, may move for a judgment of nonsuit. If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment of *nonsuit* operates as an adjudication upon the merits."

[2] A nuisance is defined as "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to inter-

is a field of tort liability, rather than a type of tortious conduct. It has reference to the interests invaded, to the damage as harm inflicted, and not to any particular kind of act or omission that has led to the invasion. The attempt frequently made to distinguish between nuisance and negligence, for example, is based upon an entirely mistaken emphasis *upon what the defendant has done rather than the result which has followed,* and forgets completely the well established fact that negligence is merely one type of conduct which may give rise to a nuisance." (Italics added; Prosser on Torts (3d ed. 1964) pp. 594-595; see also Rest., Torts, Scope and Introductory Note to ch. 40, at § 822.) ■ Accordingly, nuisance is not a separate tort but a species of damage occasioned by conduct which is tortious because it falls into the usual categories of tort liability. (Prosser, *supra,* at p. 598; Rest., Torts, *supra.*)

Adverting to the cause of action in the instant case, we apprehend it to be one for damages for obstructing the flow of a watercourse to the damage of plaintiff's property. This cause of action is predicated on two theories. The first is based on the law of water to the effect that a person may not, with impunity, obstruct or divert the flow of a natural watercourse to the damage of others' property, and that where a natural watercourse is obstructed, the diverter is under the continuing duty of providing proper facilities for handling the diverted waters so as to prevent damage to the property of others. (*Smith* v. *City of Los Angeles,* 66 Cal.App.2d 562, 572, 580, 583 [153 P.2d 69]; *Hellman etc. Bank* v. *Southern Pac. Co.,* 190 Cal. 626, 634 [214 P. 46]; *Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 636 [220 P.2d 897]; *Smith* v. *East Bay Municipal Utility Dist.,* 122 Cal.App.2d 613, 622-623 [265 P.2d 610]; *Mitchell* v. *City of Santa Barbara,* 48 Cal.App.2d 568, 572 [120 P.2d 131]; *Granone* v. *County of Los Angeles,* 231 Cal.App.2d 629, 646 [42 Cal.Rptr. 34].) The second theory upon which plaintiff relies is that the diversion of the waters causing damage was caused by defendants' negligence in obstructing the subject channel. Such a diversion will support a finding of negligence. (*Smith* v. *East Bay Municipal Utility Dist., supra; Granone* v. *County of Los Angeles, supra,* at p. 650; *Brush* v. *Southern Pac. Co.,* 47 Cal.App. 54, 58 [190 P. 216]; *Ambrosini* v. *Alisal Sanitary Dist.,* 154 Cal.App.2d 720, 726 [317 P.2d 33].)

■ In the instant case it is clear from the evidence adduced that the stream or creek channel constituted a watercourse.[3] In *Los Angeles*

---

fere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway . . . ." (Civ. Code, § 3479.)

[3]No contention is made in the instant case that the subject channel is not a watercourse.

*Cemetery Assn.* v. *City of Los Angeles,* 103 Cal. 461, 464-465 [37 P. 375], the Supreme Court defined a watercourse as follows: "There must be a stream usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel, having a bed, sides, or banks, and usually discharge itself into some other stream or body of water." (See *Sanguinetti* v. *Pock,* 136 Cal. 466, 471-472 [69 P. 98, 89 Am.St.Rep. 169]; *South Santa Clara etc. Dist.* v. *Johnson,* 231 Cal.App.2d 388, 393 [41 Cal.Rptr. 846].) ■ A watercourse may exist, moreover, even though it serves as a mere channel by means of which a particular watershed is drained, and although it may be dry in certain seasons. (*Phillips* v. *Burke,* 133 Cal.App.2d 700, 703 [284 P.2d 809]; *Costello* v. *Bowen,* 80 Cal.App.2d 621, 627 [182 P.2d 615]; *South Santa Clara etc. Dist.* v. *Johnson, supra,* at p. 394.) Accordingly, water consisting of the runoff from the usual and recurring rainfall constitutes a watercourse when it runs in a well-defined channel. (*South Santa Clara etc. Dist.* v. *Johnson, supra,* at p. 395; *Lindblom* v. *Round Valley Water Co.,* 178 Cal. 450, 453 [173 P. 994].)

■ In the instant case the evidentiary facts disclose that the watercourse was narrowed by the construction of the fill driveway in a manner requiring the channel waters to flow through a pipe 24 inches in diameter. Thus the presence of the driveway in the channel interrupted the natural flow of water, and when the drain pipe could not take a log 22 inches in diameter the subject flooding occurred. Since it is established and undisputed that the driveway changed the natural system of drainage and that defendants maintained the driveway, defendants were under a continuing duty of providing proper facilities for handling the waters of the stream during the rainy season so as to prevent damage to the property of others. Accordingly, defendants were under a duty not to interrupt the natural habits of the stream so as to cause an overflow beyond that which would have occurred in the absence of the fill driveway. (See *Kambish* v. *Santa Clara Valley Water Conservation Dist.,* 185 Cal.App.2d 107, 110 [8 Cal.Rptr. 215]; *Smith* v. *East Bay Municipal Utility Dist., supra,* 122 Cal.App.2d 613, 623; *Everett* v. *Davis,* 18 Cal.2d 389, 394-395 [115 P.2d 821].)[4]

---

[4]There is nothing in the instant record to suggest that the "common enemy" doctrine applicable to flood waters was in any way applicable. As pointed out in *Everett* v. *Davis, supra,* " 'Flood waters are those which escape from a stream or other body of water and overflow the adjacent territory.' [Citation.] Such waters are said to be a common enemy, against which one may protect his land even to the detriment of his neighbor. But the drastic rule which allows a property owner to divert such waters to the lands of others only applies to flood waters in the strict sense, that is, waters escaping because of their height from the confinement of a stream and running over adjacent property. Implicit in the definition of flood waters is the element of abnormality; they are flood waters because of their escape from the usual channels under conditions which do not ordinarily occur." (P. 393.)

The continuing duty imposed upon defendants must be considered in conjunction with the evidentiary facts favorable to plaintiff which establish that there was a constant danger during the rainy season of debris flowing down the channel and blocking the drainage pipe with a resultant flooding,[5] and that defendants were made aware of the substantial risk involved when the subject drainpipe was plugged by debris in 1962 causing an overflow. Although the testimony was in conflict as to the cause of this overflow, the testimony that the pipe was plugged so as to impede the flow of the waters suffices to support an inference favorable to plaintiff.

Under the facts present in the light of the applicable principles, it was a factual determination for the jury whether defendants provided the proper facilities for handling the increased waters during the rainy season through the medium of a pipe 24 inches in diameter. Additionally the adequacy of defendants' self-imposed obligation to patrol the channel for debris during the heavy rain was a factual determination for the jury. In this regard we note that George Spiegelberg testified that although he patrolled the banks of the channel and employed a long metal pole to remove debris, he would rarely go into the creek itself to remove anything for fear of being swept off his feet by the water and drowned. As noted in *Granone, supra,* "A duty of care may arise from a voluntary undertaking, since one who affirmatively assumes a duty, though a mere volunteer, must use reasonable care in discharging it." (231 Cal.App.2d at p. 649.) In sum, a jury is entitled to find negligence and breach of duty under facts which establish that the defendant has obstructed a watercourse and that such obstruction has caused an overflow of water beyond that which would have occurred in the absence of the obstruction.

The application of the principles we have articulated are demonstrated in cases which have considered factual situations similar to those in the case at bench. Thus, in *Brush* v. *Southern Pac. Co., supra,* 47 Cal.App. 54, a bridge over a watercourse caused the accumulation of debris, thus clogging the waterway and causing the water to overflow and destroy the plaintiff's orange trees. The appellate court held that the building of such a bridge was not of itself a nuisance but became so when, by reason of its faulty construction, it diverted the storm waters and debris from the usual channel and upon the plaintiff's land. (P. 58.)

Similarly, in *Everett* v. *Davis, supra,* 18 Cal.2d 389, the defendants were enjoined from erecting and maintaining certain fences and embankments causing a diversion of stream waters onto the plaintiff's land upon the basis that, after the defendants constructed their fences, the natural means of

---

[5]Defendant George Spiegelberg testified that "a bad storm can do a lot of damage if you aren't there to watch for a plugged drain, . . ."

drainage was disturbed when the waters were sent through a narrow channel in a manner quite different from the natural flow. (Pp. 393-395.) In *Everett,* the Supreme Court relied on *Thomson* v. *La Fetra,* 180 Cal. 771 [183 P. 152] where it was held (at p. 773) that one who changed the course of waters by bringing them through a flume was guilty of trespass when the waters were cast upon the land of another.

Again, in *Smith* v. *City of Los Angeles, supra,* 66 Cal.App.2d 562, a compliant was held to state a cause of action for damages, where it was alleged that the defendants constructed and maintained dikes across river channels so as to obstruct waters naturally flowing therein and causing such waters to be diverted to other channels from which they overflowed and damaged the plaintiff's neighboring lands. The rationale of the holding is that drainage improvements must follow the natural drainage of the country and that if the water is diverted out of its natural channel upon neighboring land, the diverter is liable to the owner whose land is injured by such discharge. (P. 576; see also *Archer* v. *City of Los Angeles,* 19 Cal.2d 19, 28 [119 P.2d 1].)

In *Granone* v. *County of Los Angeles, supra,* 231 Cal.App.2d 629, a county and flood control district were held liable in an action in inverse condemnation for damages to crops proximately caused by flooding of land adjacent to a drainage water channel constructed by the county and the district where the evidence showed that the channel was not planned and constructed in accordance with good engineering practices and was maintained in a negligent manner. In affirming the judgment of the lower court, after a trial by jury, the reviewing court held that it was sustainable, among other grounds, upon the pleaded theories of the duty owed under water law not to obstruct or divert a natural watercourse (p. 646), negligence (p. 649), and nuisance liability (p. 650).

Defendants also urge that plaintiff did not show any causal connection between defendants' conduct and the resulting injury. In this regard we note, initially, that on a motion for nonsuit the dispositive issue is the legal question of duty and not the fact question of proximate cause. (*Amaya* v. *Home Ice, Fuel & Supply Co.,* 59 Cal.2d 295, 307 [29 Cal. Rptr. 33, 379 P.2d 513]; *Fuller* v. *Standard Stations, Inc.,* 250 Cal.App.2d 687, 692 [58 Cal.Rptr. 792].) As pointed out by Prosser, the question as to whether the conduct of the defendant caused the plaintiff's harm is one of fact "upon which any layman is quite as competent to sit in judgment as the most experienced court. For that reason, in the ordinary case, it is

peculiarly a question for the jury." (*Prosser, supra,* at p. 241.) We do not perceive this to be other than the ordinary case where causation is a fact.

The judgment is reversed.

Sims, J., and Elkington, J., concurred.